**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAM HARGROVE, ANDRE HALL, and MARCO EUSEBIO, individually and on behalf of all others similarly situated, | Civil Action No.: 10-1138 (PGS) |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| SLEEPY'S LLC, | |
| Defendant. | |

This matter is before the Court on two motions for summary judgment. The case concerns whether employees (Plaintiffs) were misclassified as independent contractors by Defendant, Sleepy's LLC.  The Plaintiffs sue under the Employee Retirement Income Security Act (ERISA) 29 U.S.C. § 1001, et seq.

I

In this case, there are facts presented generally which apply to all Sleepy's deliverers, and some that relate to three named plaintiffs.  The general facts are presented first.

Defendant Sleepy's LLC ("Sleepy's") is a New York based mattress retailer that provides delivery services to its customers.  In turn, Sleepy's contracts with delivery companies or with individuals (collectively "deliverers") to deliver mattresses, beds, pillows, and mattress pads to its customers. Sleepy's refers to these contracts as Independent Driver Agreements ("IDAs").

The IDAs classify the deliverers with whom Sleepy's enters into contracts as "independent contractors" and the delivery companies' personnel as "not employee(s) of

1

Sleepy's." The relationship between Sleepy's and its deliverers is nonexclusive. On any particular day, Sleepy's is not obligated to request and no signatory to an IDA is obligated to provide delivery services for Sleepy's.  A deliverer is free to use its vehicles and/or personnel to perform deliveries for other companies when it is not performing deliveries for Sleepy's. However, Sleepy's does not permit a truck making deliveries for it to have merchandise from other companies on the truck while making Sleepy's deliveries. Additionally, Sleepy's provides training materials to anyone who drives or works as a helper on a truck making Sleepy's deliveries. The training materials set forth several requisites for trucks used for Sleepy's deliveries.

Deliverers must procure Sleepy's products from one of Sleepy's six distribution centers. One of Sleepy's six distribution centers is located in Robbinsville, New Jersey ("Robbinsville facility").  A deliverer that picks up mattresses from the Robbinsville facility must supply its own trucks, which it is responsible for insuring and maintaining.  Sleepy's provides deliverers with scanners, known as Agentek, which Sleepy's requires drivers to use during the course of their day. The scanners enable Sleepy's to monitor where trucks are located at any given time of the day.  Drivers are required to enter each delivery as it is made into the scanners after each stop.

Deliverers are responsible for hiring, firing, and paying its personnel and bearing its own business expenses. However, in order to work on a truck making Sleepy's deliveries, an individual must consent in writing to a background check performed by Mind Your Business, Inc. ("MYB") which is paid for by Sleepy's.  Failing the MYB background check disqualifies an individual from making Sleepy's deliveries.  A deliverer may continue to employ an individual that fails a MYB background check so long as he or she does not perform deliveries for Sleepy's.

2

Sleepy's reserves the right to audit trucks to ensure that the delivery personnel are working in accordance with Sleepy's rules. Sleepy's requires deliverers to wear Sleepy's uniforms while making deliveries for it.  Sleepy's has the right to alter drivers' schedules as it deems appropriate, in order to accommodate a customer's request. Sleepy's maintains a policy which imposes penalties upon delivers for failure to make assigned stops in the assigned order. Sleepy's also has the authority to terminate a deliverer at its discretion.

In addition to the above, there are additional facts presented about three plaintiffs, Marco Eusebio, Samuel Hargrove and Andre Hall.

Plaintiff Marco Eusebio created Eusebio Trucking Corp. ("ETC") in September 2003. Marco Eusebio and his brother Pedro Eusebio served as President and Vice President of ETC respectively. ETC entered into two separate IDAs with Sleepy's, the first on September 18, 2003 and the other on February 24, 2005.  Section 3 of both the 2003 and 2005 IDAs provided that ETC "agree[d] and have advised your personnel that you and your personnel are not employee(s) of Sleepy's and are not entitled to and hereby waive any claim to any benefits provided by Sleepy's." Under the IDA, the duration of the relationship between Sleepy's and ETC was day-to-day.  Additionally, Marco Eusebio helped create and partially owned Curva Trucking LLC ("Curva"). On August 6, 2008, Curva entered into an IDA with Sleepy's. According to Marco Eusebio, Sleepy's exercised basically the same level of control over ETC as it did over Curva from 2004 to 2009.  Both ETC and Curva requested "Employer Identification Numbers" from the Internal Revenue Service ("IRS").

ETC apparently hired its own personnel. Marco Eusebio or Pedro Eusebio decided which employees worked on which trucks without any input from Sleepy's. ETC paid its personnel, including drivers, helpers, and assistants, varying rates. Marco Eusebio, Pedro Eusebio, and

Emma Bravo, a former member of ETC's Board of Directors, had input in setting ETC's pay rates.  Sleepy's had no input in setting ETC's pay rates. ETC provided worker's compensation, and paid its own taxes and taxes.  There is no evidence in the record that anyone ever reported to the tax authorities that Sleepy's employed Marco Eusebio. Furthermore, ETC apparently employed a number of individuals who did not perform deliveries for Sleepy's.  ETC employed at least fifteen individuals who were not on record with Sleepy's as having passed the MYB background check, a purported prerequisite to work on a Sleepy's delivery.

If ETC personnel damaged an item during delivery, Marco Eusebio and Pedro Eusebio decided whether and how much to deduct from the pay of the ETC personnel involved. When an ETC or Curva driver received a traffic ticket, ETC or Curva paid that ticket from either a corporate bank account or Marco Eusebio's personal money. ETC and Curva each spent money on the repair and maintenance costs of their trucks.  ETC bought and insured its trucks. ETC spent money on legal and professional fees, hotel stays for drivers, wages, gas, tolls, parking, food, advertising, telephone bills, mailboxes, and office facilities.

ETC and Curva both kept their records in their offices, including receipts, repair documents, and manifests. ETC and Curva each had their own bank accounts. Both companies had their own operating licenses from the Department of Transportation. Sleepy's never dictated that a particular person work on a particular truck and Marco Eusebio status as President of ETC charged him with managing his personnel. On the days ETC made a delivery for Sleepy's, Marco Eusebio's workday did not end at a set time, but instead ended when he completed his work. Sleepy's contends that the record presents no evidence that it controlled Marco Eusebio's

actual hours of work.[1]

Plaintiff Samuel Hargrove ("Hargrove") formed I Stealth LLC ("Stealth") in November 2005 as a trucking firm.  Hargrove managed Stealth and was its sole member.  Prior to 2008, Stealth delivered products for a tire company and Sleepy's competitor Dial-a-Mattress. On May 20, 2008, Stealth entered into an IDA with Sleepy's. On August 6, 2008, Stealth entered into an addendum to the IDA, under which Stealth received compensation to advertise Sleepy's by imprinting Sleepy's logo on its delivery truck. Under the IDA, the duration of Stealth's relationship with Sleepy's was day-to-day. In 2005, the IRS issued an "Employer Identification Number" to Stealth.

Stealth utilized one truck to make deliveries for Sleepy's. Stealth utilized the same truck to make deliveries for Dial-a-Mattress, the tire company, and Sleepy's. Stealth paid all costs associated with that truck, including fuel, insurance, and maintenance. Stealth paid traffic tickets incurred by the drivers of its delivery truck.

Sleepy's never paid Hargrove any money directly. Instead, Sleepy's paid Stealth, and Stealth, in turn, paid its personnel. Moreover, Stealth paid its drivers overtime, worker's compensation insurance and disability insurance. Hargrove maintained Stealth's personnel files, receipts, and tax returns at its office in Willingboro, New Jersey. Hargrove decided when he would take a lunch break and the particular route Stealth drivers took to make deliveries. Stealth and Sleepy's ended their relationship in October 2008.

On December 17, 2005, Andre Hall ("Hall") entered into an IDA with Sleepy's and requested an "Employer Identification Number" from the IRS. Hall signed the IDA on his own

---

[1]Plaintiffs dispute this fact pointing to evidence that failure to make assigned stops in the assigned order could result in fines or other sanctions

behalf.  On August, 28,  2007, Hall entered into an addendum to the IDA, under which he would receive compensation to advertise Sleepy's logo on his delivery truck. Hall hired his own help without direction from Sleepy's except for the MYB background checks. Sleepy's provided Hall with a 1099 Form every year. Sleepy's never provided Hall with a W-2 form, and there is no evidence in the record that Hall ever reported to any tax authority that Sleepy's was his employer.

Sleepy's paid Hall directly on a weekly basis as an independent contractor but did not provide him with any benefits.  Hall negotiated pay rates for deliveries with Sleepy's. The amount Sleepy's paid Hall depended on the amount of deliveries he performed and the location of those deliveries. However, Sleepy's did not pay the individuals that worked for Hall. Hall had the responsibility of compensating his workers without any input from Sleepy's. Moreover, Hall paid for, insured, and serviced all of his vehicles with the only requirement from Sleepy's being that the delivery trucks be fourteen or sixteen feet in size.

Hall maintained business records related to his work with Sleepy's in a file cabinet at his home.  Although Hall ate at the Robbinsville facility approximately twice a week, Sleepy's did not require him to eat there.  Hall's working hours varied widely when he delivered for Sleepy's. Furthermore, Hall bore the risk of loss if a mattress was damaged during delivery.

**Plaintiffs' Complaint**

Plaintiffs contend that Sleepy's drivers are, in fact, employees entitled to the same protections and benefits as all other employees. Plaintiffs seek damages against Sleepy's because it allegedly misclassified them as independent contractors, causing various losses of a financial and non-financial nature. All three Plaintiffs signed an IDA; but plaintiffs allege it is a guise to avoid payment of employee benefits.  Two Plaintiffs signed the IDA as a limited liability

6

company while the third signed as a proprietorship.  Plaintiffs' claims include violations of state wage laws, overtime, unjust enrichment, and breach of contract.  Moreover, Plaintiffs also allege that certain federal laws are at issue – the Family Medical Leave Act ("FMLA") (sick time), and ERISA (health and 401(k) benefits).  Plaintiffs seek damages and a declaratory judgment regarding their status as employees for purposes of the legal benefits and protections that would result.

Sleepy's provides individuals it deems to be employees with medical, dental, and vision benefits, as well as 401(k) benefits.  Additionally, Sleepy's provides voluntary benefits such as term life insurance, short term disability, long term disability, and flexible spending. All full-time employees are eligible for benefits and the available benefits are the same for all eligible employees.  The three named plaintiffs allege that they sought medical and/or family leave; but Sleepy's has no record of same.

III.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"   *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

7

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

The decision of whether an individual is an employee or an independent contractor is usually made as a result of a summary judgment motion. *See Kalkama v. Konica*, 2011 WL 3703471 (DNJ 2011); *Sturgis v. Mattel*, 525 F. Supp. 2d 695 (DNJ 2007).

Generally, the Third Circuit has held that determining whether an individual is an employee or an independent contractor is a question of law to be determined by the court. *DaBronao v. Roche Vitamins, Inc.*, 232 F.Supp. 2d 306, 315-16 (D.N.J. 2002); *Metropolitan Pilots Association, LLC v. Schlosberg*, 151 F. Supp. 2d 511 (D.N.J. 2001); *see also Cox v. Master Lock, Co.,* 815 F. Supp. 844, 845 (E.D. Pa. 1993)

In this matter, the chief precedent was established twenty years ago in *Nationwide*

8

*Mutual v. Darden*, 503 U.S. 318 (1992).  In *Darden*, the Court determined the factors to be considered in defining an "employee" under ERISA.  *Darden* utilized general common law of agency since Congress did not legislate any other definition when enacting ERISA.  *Id.* at 323. Justice Souter adopted the common law test as the Court had done previously.  *See*, *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989). Quoting from the *Reid* case, Justice Souter framed the analysis as follows:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323-24.

Most importantly, Justice Souter noted that the common law test contains "no shorthand formula or magic phrase that can be applied to find the answer . . .  all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Id.* at 324 (quoting from *NLRB v. United Ins. Co.*, 390 U.S. 254, 258 (1968).  *See generally*, *Kalksma v. Konica*, 2011 WL 3703471 (D.N.J. 2011); *Sturgis v. Mattel, Inc.*, 525 F. Supp. 2d 695 (D.N.J. 2007).

In weighing the *Darden* factors to the facts of this case, they overwhelmingly show that the plaintiffs were independent contractors. The facts are: (1) each plaintiff set up their own business entity; (2) each entered an IDA; (3) each maintained their own business records; (4) each hired their own workers; (5) each maintained a relationship with the IRS, as a business entity; (6) each purchased their own trucks, and maintained vehicle insurance and obtained motor vehicle registrations from state authorities; and (7) each paid their own expenses.

On the other side of the coin, plaintiffs argue that Sleepys had extensive control of deliverer's activities. More specifically, Sleepy's monitored the delivery progress each day with electronic equipment, and required background checks on all deliveries.  These two requirements were to assure customer satisfaction and safety in a competitive business.

ORDER

IT IS on this 28th day of March, 2012;

ORDERED that the motion for summary judgment by Sleepy's [docket number 64] is granted;  and it is further

ORDERED that the motion for partial summary judgment by Plaintiffs [docket number 54] is denied.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

10