UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAM HARGROVE, individually and on behalf of all others similarly situated, et al.<br><br>v.<br><br>SLEEPY'S LLC, et al. | Civil Action No. 10-cv-1138 (PGS)<br><br>MEMORANDUM AND ORDER |

**SHERIDAN, U.S.D.J.**

This matter is before the Court on Plaintiffs Marco Eusebio, Andre Hall, and Sam Hargrove's renewed Motion for Class Certification, which this Court construes as a Motion for Reconsideration of this Court's prior Order Denying Class Certification (ECF No. 216), and Henderson Clarke, Alejandro Serrano, Aldrin Cevallos, Dante Gomez, Dimitri Celik, Francisco Bautista, Gregorio Diaz, Javier Duque, Juan Brito, Julio Castillo, Keiron Ottey, Manuel Estrada, Michael Simpson, Richard Tousett, Ucha Barbakadze, and Wilfredo Rosario's (hereinafter "proposed Intervenors") Motion to Intervene, or in the alternative, to allow Plaintiffs to amend their complaint to add the proposed Intervenors as Plaintiffs (ECF No. 214). (ECF Nos. 214, 216). For the reasons expressed herein, Plaintiffs' Motion for Reconsideration of this Court's prior Order Denying Class Certification is DENIED, the proposed Intervenors' motion to intervene is DENIED, and Plaintiffs' Motion to Amend their complaint to add the proposed Intervenors as additional Plaintiffs is GRANTED.

I

Plaintiffs Sam Hargrove, Andre Hall, and Marco Eusebio were delivery drivers for Defendant Sleepy's LLC ("Sleepy's"). *Hargrove v. Sleepy's LLC*, 612 Fed. Appx. 116, 117 (2015).

1

In 2010, Plaintiffs filed a complaint in this Court, on behalf of a putative class, alleging that Sleepy's misclassified them as independent contractors rather than employees, and thus denied them protections and benefits under the Employee Retirement and Income Security Act, the Family Medical Leave Act, and the New Jersey Wage Payment Law. *Id.* The history of this case has previously been set out in a number of issued opinions, and the Court incorporates the facts and procedural history as set forth in its Court's previous Memorandum and Order denying Plaintiffs' Motion for Class certification, ECF No. 213.

Plaintiffs previously sought certification for a class that met the following criteria: individuals that (1) worked full-time making deliveries for Sleepy's and thus were misclassified as independent contractors; (2) were subject to improper deductions; and (3) worked over 40 hours per week without being paid over-time. *Hargrove v. Sleepy's, LLC*, No. 10-01138, 2018 U.S. Dist. LEXIS 32323, at *5 (D.N.J. Feb. 28, 2018). In their prior motion for class certification, Plaintiffs claimed that "at least 193" people met the criteria for the proposed class. *Id.* To determine the proposed class, Plaintiffs relied on the affidavit of Rebecca Shuford, who explained that to determine the proposed class, she relied upon: (1) Outside Carrier Expense Detail reports, which were produced by Sleepy's for all trucks that made deliveries out of its Robbinsville, New Jersey facility from January 1, 2007 to 2010; (2) the Outside Carrier Spreadsheets, which contained data for payments and deductions that were made to carriers operating out of the Robbinsville facility, from 2011 to 2016; and (3) Gate Logs from 2008 to 2009, totally approximately 3,400 pages.

The Court noted that there were three main issues that needed to be resolved through exploring Ms. Shuford's review of the data and conclusions as to the class size: "(1) how to determine which drivers provided delivery services for Sleepy's on a full-time basis; (2) who was

subject to improper wage deductions; and (3) who failed to receive over-time pay when working more than 40 hours per week." *Id.* at *7-*8

The Court found that, based on Plaintiffs' proposed methodology as described above, Plaintiffs faced a "major hurdle in assessing the ascertainability of the proposed class size and consequently all other requirements to certify the class." *Id.* at *15-*16. The Court explained, "the methodology provided by Plaintiffs only fits contractors with only one driver, or 73 contractors as identified by Ms. Shuford, *assuming Plaintiffs are able to gather records for the proposed relevant period, identified as 2007-2016.*" *Id.* at *21 (emphasis added). Because identifying the members of the class would require specific fact-finding as to each individual, based on the information previously provided, the Court denied Plaintiffs' motion for class certification.

Plaintiffs bring the present motions: to intervene, or in the alternative, amend their complaint to add the proposed intervenors as Plaintiffs; and for reconsideration of this Court's prior order denying class certification. Regarding the motion for reconsideration, Plaintiffs propose a new, limited class of "111 individuals who performed deliveries for Sleepy's pursuant to independent contractor agreements in New Jersey at any time since March 4, 2004, who were single-route operators at all times that they worked for Sleepy's, or who did so for at least six months." (Pl. br., ECF No. 216, at 2). At oral argument, Plaintiffs clarified that the class would be limited to the owners of the carriers that worked full-time for Sleepy's, i.e., were "single-route drivers" that "actually did the driving on a regular basis, and who suffered the improper deductions or worked overtime . . . ." (Tr. of Oral Argument, July 13, 2018, T13:19-15).

II

Pursuant to Rule 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Defendant argues that the

3

Court should construe the renewed motion for class certification as a motion for reconsideration. In contrast, Plaintiffs argue that, because the Court denied their previous motion for class certification "without prejudice," the present motion should be treated as an independent motion upon narrowing the alleged class or pleadings. The Third Circuit has not adopted a standard for reevaluating an initial denial of certification without prejudice.

"Rule 23 enables a district court to alter or amend its class certification decision any time before final judgment. A court may change its mind in either direction; it can: *certify* a class that it initially rejected, [or] *decertify* or *modify* a class that it initially approved." 3 Newberg on Class Actions § 7:34 (5th ed.). "When confronting renewed motions for class certification previously denied, 'courts uniformly apply the stringent law of the case standard to motions to reconsider initial class certification decisions.'" *Torrent v. Yakult U.S.A., Inc.*, No. 15-00124, 2016 U.S. Dist. LEXIS 183926, at *4 (C.D. Cal. Mar. 7, 2016) (quoting *Anderson Living Trust v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 438 (D.N.M. 2015)); *see also* Newberg on Class Actions § 7:35 (5th Ed.) (explaining that courts apply the law of the case doctrine because courts are reluctant "to allow parties to have a 'second bite at the apple' by relitigating issues that have already been decided, thereby incentivizing parties to put their best foot forward at the outset and avoiding costly delays to the proceedings."). For these reasons, the Court construes Plaintiffs' renewed motion for class certification as a motion for reconsideration of this Court's prior Order denying class certification.[1]

---

[1] Local Civil Rule 7.1(i) states that motions for reconsideration shall be filed within fourteen days after the entry of the order or judgment on the original motion. Comment two to the Rule states that "the court has the authority under L. Civ. R. 83.2(b) to permit relaxation of timeliness, but only in extraordinary circumstances to prevent 'surprise or injustice.'" Plaintiffs filed the present motion almost two months after the Court denied class certification. However, because the motion was for renewed class certification, and the Court is construing that motion as a motion for

4

Local Civil Rule 7.1(i) permits reconsideration of a prior order "upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decisions." L. Civ. R. 7.1(i) cmt. 6. Accordingly, "[a] judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, No. 11-07382, 2018 WL 2357749, at *2 (D.N.J. May 24, 2018) (quoting *Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). The Court in *Tropicana* explained,

> "The word 'overlooked' is the operative term in [Rule 7.1(i)]." *Lentz v. Mason*, 32 F. Supp. 2d 733, 751 (D.N.J. 1999) (citation omitted). "Only dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." *Id.* (quotation and citation omitted). "[S]uch motions are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers." *Id.* (quotation and citation omitted).

*Id.*

### III

Construing the present motion as a motion for reconsideration, Plaintiffs must show that there is either a change in the controlling law, new evidence available to support class certification, or a manifest error or injustice that taints the prior denial of class certification. Plaintiffs have not shown that either of these exist. Instead, on their renewed motion for class certification, Plaintiffs propose a narrower class definition, which is substantially the same as the prior class definition, with one change: class members now must be "single-route" operators at all times they worked for

---

reconsideration, the Court finds that relaxation of the fourteen-day time limitation to file motions for reconsideration is prudent here to prevent surprise and injustice to Plaintiffs.

5

Sleepy's. (Pl. br., ECF No. 216, at 2). At oral argument, Plaintiffs clarified that a single-route operator was "someone who has one truck and drives . . . one truck and does . . . one route each day." (Oral Argument, July 13, 2018, T4:20-24). According to Plaintiffs, examining "single-route" operators will allow the Court to determine who worked full-time for Sleepy's.

Plaintiffs argue that this Court has previously acknowledged they can meet the ascertainability requirement under Rule 23(b)(3) for "single-route contractors" when the Court noted that "the methodology provided by Plaintiffs only fits contractors with only one driver, or 73 contractors as identified by Ms. Shuford, *assuming Plaintiffs are able to gather records for the proposed relevant period, identified as 2007-2016.*" *Hargrove*, 2018 U.S. Dist. LEXIS 32323, at *21. Although the Plaintiffs rely on this statement by the Court, this statement was a broad statement, and not meant to be the law of the case.

"Class certification is appropriate when the prerequisites of Federal Rule of Civil Procedure 23 are met." *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 318 (3d Cir. 2016). "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–701 (1979)). To fall within this exception, a party moving to represent a class "must affirmatively demonstrate his [or her] compliance with Rule 23." *Id.* The Third Circuit has emphasized that "actual, not presumed, conformance with Rule 23 requirements is essential." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Id.*

To meet this burden, plaintiffs must satisfy the four prerequisites of Rule 23(a) and show that the action can be maintained under at least one of the three subsections of Rule 23(b). *See*

*Johnston v. HBO Film Mgmt., Inc.,* 265 F.3d 178, 183 (3d Cir. 2001). These four requirements under Rule 23(a) are referred to as numerosity, commonality, typicality, and adequate representation. *Id.* The requirements are "meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir. 1994).

Most importantly, a plaintiff seeking certification of a class must "prove by a preponderance of the evidence that the class is ascertainable," pursuant to Rule 23(b)(3). *See Byrd v. Aaron's Inc.,* 784 F.3d 154, 163 (3d Cir. 2015). The class "must be currently and readily ascertainable based on objective criteria." *Marcus,* 687 F.3d at 593. "Ascertainability functions as a necessary prerequisite (or implicit requirement) because it allows a trial court effectively to evaluate the explicit requirements of Rule 23. In other words, the independent ascertainability inquiry ensures that a proposed class will actually function as a class." *Id.* at 162. "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d349, 355 (3d Cir. 2013)). "The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that class members *can* be identified." *Byrd,* 784 F.3d at 16. However, "a party cannot merely provide assurances to the district court that it will later meet Rule 23's requirements . . . [n]or may a party merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." *Id.* "If class members are impossible to identify without extensive and

7

individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593.

To ascertain this class, Plaintiffs rely primarily on the declarations of individuals that seek to intervene. Plaintiffs also argue that the Court can ascertain a class based on the Outside Carrier Expense Detail Reports, Gate Logs, and Driver Rosters, documents the Court previously found as unable to determine the ascertainability of the proposed class. Apart from the new declarations of the potential class members/proposed intervenors, Plaintiffs offer no new evidence to support that their class is ascertainable.

To explain the methodology in ascertaining the new proposed class, in her deposition, Ms. Shuford explained that she used the Outside Carrier Expense Details, which lists the company initials, but does not contain the name of the driver, and matched those company initials with the Driver Rosters, which identifies the company initials, as well as the Owner and Driver of each carrier. (Dep. Of Shuford, ECF No. 222-1, T17:10-17). Ms. Shuford then explained that she cross-referenced those documents with the Gate Logs, explaining that a specific gate log would inform her of when an individual drove into the Robbinsville Facility. (*Id.* at T28:16-19).

At oral argument on the renewed motion, Plaintiffs attempted to clarify their methodology for ascertaining the class. First, Plaintiffs must be able to ascertain who worked as "single-route" drivers, or full-time for Sleepy's. Using the example of proposed intervenor Aldrin Cevallos, Plaintiffs pointed to the driver roster for August 14, 2008, which they argue identifies Cevallos with the company initials "5AP", and lists him as both the owner and driver for that day. (ECF No. 146-10, at 2; Tr. of Oral Argument, T9:5-12:15). Plaintiffs argued that the driver rosters document the individuals who were authorized drivers. (Tr. of Oral Argument at T9:9-11).

To corroborate the information found in the Driver Rosters, Plaintiffs next provide the Gate Log for July 25, 2008, which shows information including the arrival time at the Robbinsville facility, identified as "TIME IN" for each vendor/contractor, the Driver's name, the last four digits of the license number, the helpers name, the truck license plate number, and the "TIME OUT" of the facility for each vendor/contractor. (ECF No. 146-10, at 2; at 3). Plaintiffs highlighted line number six of that Gate Log, which lists "TIME IN" as 18:10, vendor/contractor as "AP", and the Driver name as "Aldrin Cevallos." (ECF No. 225-4 at 3). The Gate Log does not identify when Cevallos left the facility. (*Id.*) Plaintiffs then produced several other Gate Logs for Cevallos, dated July 26, 28, 29, and 31, 2008, and in connection with the Driver Roster, they argue these documents show who the driver of a particular truck was, and who drove on what day. (T11:10 to 15). Finally, Plaintiffs point to the Outside Carrier Expense Details, which they argue show whether a carrier has been driving on a specific day, whether deductions were made for compensation, and whether there were multiple trucks driven by a carrier. (ECF No. 225-4 at 8-9).

As the Court previously explained, while these documents may identify individuals who drove one truck with Sleepy's, they do not identify which drivers drove *full time* for Sleepy's, as necessary to ascertain members of the proposed class. First, regarding the driver rosters supplied by Plaintiffs, while they show individuals who drove a truck on a specific day, and provide information about particular days, the documents do not provide any information that would help determine which of those drivers were working full time for Sleepy's. Based on these records, the Court is unable to determine if Sleepy's was the only company the drivers worked for. Further, it is unclear to the Court whether Driver Rosters exist for the entire class period, 2007-2016. Second, regarding the Gate Logs, Plaintiffs have done little to rectify the issues first identified by the Court in its prior order denying class certification:

> The issue with this strategy is that the gate logs are not fully completed. Sometimes the time a truck entered the facility (time-in) and the time it left the facility (time-out) was not recorded. As a result, there are gaps in listing time-in or time-out of the facility for the trucks and the drivers. . . . there is no way of precisely determining what the time-in or out was for any given person . . . Another issue is that Plaintiffs only have gate logs for 2008 and 2009. At this time, there is no way of verifying whether there are gaps in the gate logs similar to the gaps in 2008 and 2009 for the entire class period; and if gaps exist, the extensiveness of such gaps. Ms. Shuford has not proposed an alternative strategy to identifying each driver other than cross-referencing the gate logs and the rosters.

*Hargrove*, 2018 U.S. Dist. LEXIS 32323, at *20.

In their new motion, Plaintiffs have not provided Gate Logs for years the full class period, and while Plaintiffs argue that those documents would be in Defendant's possession, at this time, neither party has demonstrated to the Court that those documents, which Plaintiff believes necessary to show which drivers worked full time, exist. Nor have Plaintiffs shown how the Gate Logs demonstrate which drivers worked full time, or as single-route drivers, for Sleepy's. As with the Drover Rosters, the Gate Logs only provide a glimpse into what drivers arrived on certain days at the Sleep's facility. Finally, regarding the Outside Carrier Expense Details, these also do not provide adequate information to determine who worked full-time for Sleepy's. These documents provide the truck number, and the total stops made on certain days, but do little to identify the actual driver of the truck or the of hours that driver worked.

The Third Circuit has explained that "[a]ffidavits from potential class members, standing alone, without 'records to identify class members or a method to weed out unreliable affidavits,' will not constitute a reliable and administratively feasible means of determining class membership." *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 441-42 (3d Cir. 2017) (quoting *Byrd*, 784 F.3d at 171). However, "[a]ffidavits, in combination with records or *other reliable and administratively feasible means*, can meet the ascertainability standard." *Id.* (emphasis added). Here, while the Plaintiffs have provided declarations from several proposed

10

class members, they have not identified any other reliable and administratively feasible means of ascertaining the class. While the documents may show which driver was at the Robbinsville facility on a specific day, the documents do not provide sufficient links that allow the Court to make the connection that, because a driver was at the Robbinsville facility on a specific day, that driver also worked full-time for Sleepy's and did not drive for any other companies. Apart from these documents, Plaintiffs have provided no new evidence that would allow this Court to determine the proposed class.

Instead, the Court would be required to make individualized inquiries into the status of each proposed class member, as demonstrated by the declarations provided by Plaintiffs and proposed intervenors. In each declaration, the Plaintiffs and proposed interveners state they "made deliveries for Sleepy's on a full-time basis." (*See* Decls. Of Hargrove, Hall, Clarke, Cevallos, Gomez, Serrano, Simpson, Rosario, Ottley, and Duque, ECF Nos. 216-1 to 216-10). It is only from these declarations that the parties and the Court are able to determine which single-route drivers worked full time for Sleepy's during the class period.

The same issues identified above in Plaintiffs' methodology for determining which potential class members worked full time, or as single-route drivers, also exist in determining which potential class members were subject to improper deductions and which potential class members worked over forty hours per week without being paid over-time. Plaintiffs have offered no new evidence nor demonstrated that the Court was manifestly erroneous in prior denial of certification on these issues. Regarding the improper deductions, individualized inquires will be required, as it is still not clear to the Court "whether any carrier reduced any drivers pay by deducting Sleepy's listed deductions." *Hargrove*, U.S. Dist. LEXIS 32323, at *21. Plaintiffs argue that because the drivers were the owners of the carriers, the deductions taken by Sleepy's is plainly

11

obvious, and to determine the deductions is "a matter of simple arithmetic." (Pl. br. at 18). However, while determining the amount of deductions may be simple based on the Carrier Expense Report Details, the documents still do not allow the Court to determine whether the drivers actually suffered a deduction. For example, Henderson Clarke testified at deposition that while Sleepy's would take deductions from the carriers, i.e., from the owners of the companies the drivers were driving for, sometimes those carriers would not pass along those deductions to the drivers. (Dep. Of Clarke, ECF No. 222-1, Ex. Q, at T16:16-17:7). Ms. Shuford even explained that she had no way of knowing whether the carrier passed any of the deductions to the drivers. (Dep. Of Shuford, ECF No. 222-1, Ex. K, at T32:17-24). Instead, similar to ascertaining drivers who worked full time for Sleepy's, the only documents that would allow the Court to ascertain which drivers actually received deductions are the declarations from the Plaintiffs and proposed intervenors. (*See, e.g.*, Decl. of Aldrin Cevallos, ECF No. 216-3, at ¶ 14). Accordingly, to determine which drivers actually received a wage deduction, the Court again would be required to make individualized inquiries into the status of each proposed class member. Finally, for the same reasons as expressed above, none of the documents provided by Plaintiffs allow the Court to determine which drivers worked overtime, and instead, an individualized inquiry into each driver's overtime status would be required.[2]

In conclusion, on a motion for reconsideration, Plaintiffs must meet a higher standard than before – they must show that either there has been a change in the controlling case law, (they have not); new evidence is available that was not available when the Court denied the motion (they have

---

[2] Plaintiffs additionally propose certifying a separate classes for two different causes of action: deductions claims under the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1b; and 2) their overtime claims under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a.

not); or the need to correct a clear error of law or fact or to prevent manifest injustice (they have not). Instead, Plaintiffs have presented the same arguments and same evidence, in an effort to certify a new, "limited" class. However, the same issues that resulted in this Court's denial of Plaintiffs' prior motion to Certify the Class remain – Plaintiffs have not shown that a reliable and administratively feasible mechanism or methodology for determining whether putative class members fall within the class definition exists to ascertain a class of single-route, full-time drivers that were subject to improper deductions and worked over forty hours per week without being paid over-time. For these reasons, Plaintiffs' Motion for Reconsideration is denied.

IV

The proposed Intervenors also bring a motion to intervene, or in the alternative, Plaintiffs bring a motion to amend their complaint to add the proposed Intervenors as Plaintiffs. In response, Defendants argue that both motions are untimely, would delay case resolution, and would unfairly prejudice Defendants.

In *American Pipe*, the Supreme Court held that the filing of a class action complaint "tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974). The Court in *Crown*[3] "later extended this holding to all asserted members of the class who file subsequent individual actions, not just intervenors." *Leyse v. Bank of Am., Nat'l Ass'n*, 538 F. App'x 156, 160 (3d Cir. 2013) (citing *Crown v. Parker*, 462 U.S. 345, 350 (1983)); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 611-12 (3d Cir. 2018) ("the purpose of *American Pipe* tolling is that 'unnamed plaintiffs should be

---

[3] *Crown v. Parker*, 462 U.S. 345 (1983).

13

treated as though they had been named plaintiffs during the pendency of the class action,' with their rights protected accordingly."). The Supreme Court explained,

> Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims. And a class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414 U.S., at 555; *see United Airlines, Inc.* v. *McDonald*, 432 U.S. 385, 395 (1977). The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification.

*Crown v. Parker*, 462 U.S. 345, 352-53 (1983). The Third Circuit further noted, "it does not matter, under federal law, whether the first suit's status as a would-be class action ends by choice of the plaintiff (who may abandon the quest to represent a class or . . . bow out altogether) or by choice of the judge." *Leyse*, 538 F. App'x at 161 (quoting *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011)).

Accordingly, the proposed intervenors may either intervene under Federal Rule of Civil Procedure Rule, or file their own *individual* actions. First, the proposed intervenors argue that they may intervene as of right under Rule 24(a)(2), which states:

> On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Third Circuit has held that intervention under Rule 24(a)(2) is only appropriate if:

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical

treated as though they had been named plaintiffs during the pendency of the class action,' with their rights protected accordingly."). The Supreme Court explained,

> Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims. And a class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414 U.S., at 555; *see United Airlines, Inc.* v. *McDonald*, 432 U.S. 385, 395 (1977). The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification.

*Crown v. Parker*, 462 U.S. 345, 352-53 (1983). The Third Circuit further noted, "it does not matter, under federal law, whether the first suit's status as a would-be class action ends by choice of the plaintiff (who may abandon the quest to represent a class or . . . bow out altogether) or by choice of the judge." *Leyse*, 538 F. App'x at 161 (quoting *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011)).

Accordingly, the proposed intervenors may either intervene under Federal Rule of Civil Procedure Rule, or file their own *individual* actions. First, the proposed intervenors argue that they may intervene as of right under Rule 24(a)(2), which states:

> On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Third Circuit has held that intervention under Rule 24(a)(2) is only appropriate if:

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical

matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)). Each requirement must be met in order for an applicant to intervene as of right. *Id.*

First, regarding the timeliness of the motion to intervene, though the litigation was first commenced in 2010, it was brought as a class action. (ECF No. 1). Accordingly, the unnamed class members' rights to either intervene or file their own individual suits were protected as of that filing date. This Court denied Plaintiffs' motion for class certification on February 28, 2018. On March 30, 2018, the proposed intervenors filed their motion to intervene. (ECF No. 213). Under *American Pipe* and *Crown*, these proposed intervenors were able to "rely on the named plaintiffs to press their claims." *Crown*, 462 U.S. at 352-53 (1983). Accordingly, in considering the reason for the delay, the Court finds that this motion is timely.

However, in addition to the timeliness of a motion to intervene, the proposed intervenors must meet additional requirements, including that their interest may be affected or impaired, as a practical matter by the disposition of the action. Here, the Court does not find that the parties have any interest that would be otherwise affected or impaired by the disposition of this action without their intervention. Importantly, under *Crown*, the proposed intervenors may file their own individual actions against Defendants. *Leyse*, 538 F. App'x at 160; *see also In re Safeguard Scientifics*, 220 F.R.D. 43, 48-49 (E.D. Pa. 2004) ("Given that the statute of limitations has been tolled by the filing of the class action complaint, the movants remain free to assert their claims by filing individual civil actions against [defendants]."). Here, the proposed intervenors "do not assert that they themselves are not capable of adequately representing their own interests and there is no evidence that they are not capable of pursuing their own claims to judgment." *Id.* Nor do they

claim that "the disposition of the present action would have any *stare decisis, res judicata* or collateral estoppel effect on any action which they might bring separately or individually." *Id.* Instead, it is clear that the proposed intervenors may assert their claims against Sleepy's individually in separate actions, and they are not required to join in this action to protect any interest. Accordingly, the proposed intervenors motion to intervene is denied.

In contrast, on a motion to amend the complaint pursuant to Federal Rule of Civil Procedure Rule 15(a)(2),"a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend the pleadings is granted freely "when justice so requires." *Id.* Courts may deny leave to amend where "plaintiff's delay in seeking amendment is undue, made in bad faith, prejudicial to the opposing party, or the amendment fails to cure the jurisdictional defect." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Here, the Court finds no evidence of undue delay, bad faith, dilatory motive, or prejudice to Defendants. For the same reasons as stated above regarding the timeliness of the motion to intervene, the Court finds that there is no undue delay in bringing this motion to amend the complaint. Additionally, the Court finds no undue prejudice to Defendant, where, under *Crown*, these proposed intervenors may bring their own claims individually against Defendant. Though Defendant argues amending the complaint would prejudice it by requiring the reopening of discovery, it does not appear to be that cumbersome when one considers all the discovery that has been accomplished to date. Therefore, adding the parties promotes judicial economy, and any arguments that Defendant is prejudiced by such an amendment based on additional discovery fails. Moreover, Defendant is fearful that the reason why Plaintiffs seek to add additional Plaintiffs through an amended complaint is because they will seek to re-certify the class. However, as discussed above, because Plaintiffs have failed to show how any class would be ascertainable, this Court has denied

Plaintiffs' motion for reconsideration of this Court's prior denial of class certification. For these reasons, Plaintiffs' motion to amend is granted, for the limited purpose of adding the proposed Intervenors as Plaintiffs.

## ORDER

This matter, having been brought before the Court on Plaintiffs' renewed Motion for Class Certification, which this Court construes as a Motion for Reconsideration of this Court's prior Order Denying Class Certification (ECF No. 216), and the proposed Intervenors' Motion to Intervene, or in the alternative, to allow Plaintiffs to amend their complaint to add the proposed Intervenors as Plaintiffs (ECF No. 214); and the Court having considered the briefs and submissions of the parties, and having heard oral argument;

IT IS on this 9 day of May, 2019;

**ORDERED** that Plaintiffs' Renewed Motion for Class Certification (ECF No. 216) is **DENIED**; and it is further

**ORDERED** that the proposed Intervenors' Motion to Intervene is **DENIED**; and it is further

**ORDERED** that Plaintiffs' Motion to Amend the Complaint is **GRANTED**; and it is further

**ORDERED** that Plaintiffs may file an amended complaint for the limited purpose of adding the proposed Intervenors as individual Plaintiffs within 30 days from the date of this order.

_____<br>
PETER G. SHERIDAN, U.S.D.J.