# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAM HARGROVE, ANDRE HALL, MARCO EUSEBIO, individually and on Behalf of all others similarly situated, | **CIVIL ACTION** |
| Plaintiffs, | **C.A. No.: 3:10-CV-01138-PGS-LHG** |
| v. | |
| SLEEPY'S LLC | |
| Defendant. | |

## <u>PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND .......................................6

III. ARGUMENT.......................................................................................8

A.  The Court Should Grant Plaintiffs' More Limited Motion for Class
    Certification, Which Plaintiffs Suggest is the Best Mechanism to
    Address This Court's Concerns................................................................8

B.  The Class of Single-Route Contractors Are Easily Ascertainable For
    Both Plaintiffs' Deductions and Overtime Claims...............................10

    1.  The Court Can Ascertain Which Single-Route Contractors
        Worked Full-Time for Sleepy's. .....................................................12

    2.  The Court Can Ascertain What Deductions Were Suffered by
        the Single-Route Contractors. .........................................................17

    3.  The Court Can Ascertain Which Single-Route Contractors
        Worked More Than 40 Hours Per Week Without Receiving
        Overtime Pay...................................................................................19

C.  Plaintiffs' Claims for Deductions and Overtime Both Satisfy Rule
    23(a) and 23(b)'s Requirements. ..........................................................23

    1.  Plaintiffs Meet the Commonality Requirement Because their
        Deductions and Overtime Claims are Based on Questions of
        Fact and Law that are Common to the Class and, Indeed, Are
        Identical Throughout .......................................................................23

    2.  Common Questions Predominate Over Questions Affecting
        Individual Class Members for Both Their Deductions and
        Overtime Claims. .............................................................................25

    3.  Plaintiffs Further Satisfy Rule 23's Other Requirements of
        Numerosity, Typicality, Adequacy, and Superiority. ......................34

D.  In the Alternative, This Court May Certify Solely the Issue of Whether
    Sleepy's Misclassified Its Delivery Driver/Contractors Pursuant to
    F.R.C.P. 23(c)(4). .................................................................................36

IV.   CONCLUSION.................................................................................................40

# TABLE OF AUTHORITIES

**Cases**

Acosta v. Scott Labor LLC,
  2006 WL 27118 (N.D. Ill. Jan. 3, 2006) ...................................................4

Am. Pipe & Const. Co. v. Utah,
  414 U.S. 538 (1974) ...................................................................................1, 8

Anderson v. Mt. Clemens Pottery Co.
  328 U.S. 680 (1945) ...................................................................20, 21, 33

Arredondo v. Delano Farms Co.
  301 F.R.D. 493 (E.D. Cal. 2014) ...............................................................22

Ayala v. Antelope Valley Newspapers, Inc.,
  327 P.3d 165 (Cal. 2014) ...........................................................................30

Baby Neal v. Casey
  43 F.3d 48 (3d Cir. 1994) ...........................................................................24

Barragan v. Evanger's Dog & Cat Food Co.,
  259 F.R.D. 330 (N.D. Ill. 2009) .................................................................4

Bogosian v. Gulf Oil Corp.
  561 F.2d 434 (3d Cir.1977) .........................................................................19

Boundas v. Abercrombie & Fitch Stores, Inc.
  280 F.R.D. 408 (N.D. Ill. 2012) .................................................................21

Butler v. Sears, Roebuck and Co.
  727 F.3d 796 (7th Cir. 2013)........................................................................37

Byrd v. Aaron's Inc.
  784 F.3d 154 (3d Cir. 2015).........................................................................1, 10

Cannon v. Cherry Hill Toyota, Inc.
  184 F.R.D. 540 (D.N.J.1999) ......................................................................6

Carrera v. Bayer Corp.
  727 F.3d 300 (3d Cir. 2013).........................................................................1

Carrow v. Fedex Ground Package Sys., Inc.
   2017 WL 1217119 (D.N.J. Mar. 30, 2017)................................................................2

Charleswell v. Chase Manhattan Bank, N.A.,
   2009 WL 1850650 (D.V.I. June 24, 2009) .......................................................1, 8

Chiang v. Veneman
   385 F.3d 256 (3d Cir. 2004).............................................................................36

City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc
   867 F.3d 434 (3d Cir. 2017)........................................................................10, 11

City Select Auto Sales, Inc. v. David Randall Associates, Inc.
   296 F.R.D. 299 (D.N.J. 2013) ...........................................................................8

Clark v. Bally's Park Place, Inc.
   298 F.R.D. 188 (D.N.J. 2014 ...........................................................................33

Culpepper v. Irwin Mortg. Corp.
   491 F.3d 1260 (11th Cir. 2007)..........................................................................9

DaSilva v. Border Transfer of MA, Inc.
   2017 WL 5196382 (D. Mass. Nov. 9, 2017) ................................................ passim

De Giovanni v. Jani-King Int'l., Inc.
   262 F.R.D. 71 (D. Mass. 2009).........................................................................31

Driscoll v. Worcester Telegram & Gazette,
   C.A. No. 2009-43 (Worcester Super. Ct. Aug. 26, 2013).........................................5

Dukes v. Wal-Mart Stores, Inc.
   131 S. Ct. 2541 (2011) ...................................................................................23

Echavarria v. Williams Sonoma, Inc.
   2016 WL 1047225 (D.N.J. Mar. 16, 2016)..........................................................2

Gates v. Rohm & Haas Co.
   655 F.3d 255 (3d Cir. 2011).............................................................................37

Gomez v. Tyson Foods, Inc.
   295 F.R.D. 397 (D.Neb.2013).....................................................................22, 33

Gunnells v. Healthplan Servs., Inc.
   348 F.3d 417 (4th Cir. 2003)..................................................................6, 9, 19, 37

iv

Hargrove v. Sleepy's, LLC,
    220 N.J. 289, 305 (N.J. 2015) ...................................................................25

Hassine v. Jeffes
    846 F.2d 169 (3d Cir. 1988)......................................................................24

Healy v. Int'l Bhd. of Elec. Workers, Local Union No. 134
    296 F.R.D. 587 (N.D. Ill. Aug.22, 2013) .....................................23, 34, 40

In re "Agent Orange" Prod. Liab. Lit.
    818 F.2d 145 (2d Cir.1987).......................................................................24

In re Cmty. Bank of N. Va.
    622 F.3d 275 (3rd Cir. 2010), as amended (Oct. 20, 2010) ....................25

In re Hydrogen Peroxide Antitrust Litigation
    552 F.3d 305 (3d Cir. 2008)......................................................................36

In re Nassau Cnty. Strip Search Cases
    461 F.3d 219 (2d Cir. 2006)......................................................................36

In re Warfarin Sodium Antitrust Litig.
    391 F.3d 516 (3d Cir.2004).......................................................................26

Jackson v. Bloomberg, L.P.
    2014 WL 1088001 (S.D.N.Y. Mar. 19, 2014) .....................................22, 33

Kalow & Springut, LLP v. Commence Corp.
    2011 WL 3625853 (D.N.J. Aug. 15, 2011) ...................................5, 19, 24

Ladegaard v. Hard Rock Concrete Cutters, Inc.,
    2001 WL 1403007 (N.D. Ill. Nov. 9, 2001) .............................................4

Lee v. City of Columbus
    2009 WL 2876263 (S.D. Ohio Sep. 4, 2009)...........................................36

Leyva v. Medline Indus., Inc.
    716 F.3d 510 (9th Cir.2013)........................................................23, 34, 40

Marcus v. BMW of N. Am. LLC
    687 F.3d 583 (3d Cir. 2012).................................................................10, 24

Martins v. 3PD Inc.,
    2014 WL 1271761 (D. Mass. Mar. 27, 2014)................................. passim

McNamee v. Nationstar Mortg., LLC
  2018 WL 1557244 (S.D. Ohio Mar. 30, 2018) ......................................................11

Mednick v. Precor Inc.
  320 F.R.D. 140 (N.D. Ill. 2017) ...................................................................9

Melgar v. CSk Auto, Inc.
  2015 WL 9303977 (N.D. Cal. Dec. 22, 2015) ........................................................21

Mendis v. Schneider Nat'l Carriers, Inc.
  2017 WL 497600 (W.D. Wash. Feb. 7, 2017) ........................................................32

Messner v. Northshore University Healthsystem
  669 F.3d 802 (7th Cir. 2012).......................................................................28

N. Jersey Media Grp., Inc. v. Bd. of Review
  2014 WL 3537947 (N.J. Super. Ct. App. Div. July 18, 2014) ...............................30

New Jersey Carpenters Health Fund v. Residential Capital, LLC
  2012 WL 4865174 (S.D.N.Y. Oct. 15, 2012) .......................................................9

O'Brien v. Encotech Constr. Servs., Inc.,
  203 F.R.D. 346 (N.D. Ill. 2001) ..................................................................4

Olibas v. Native Oilfield Servs.
  104 F. Supp. 3d 791 (N.D. Tex. 2015) ...........................................................21

Phelps v. 3PD, Inc.
  261 F.R.D. 548 (D. Or. 2009) .....................................................................27

Rehberg v. Flowers Baking Co. of Jamestown, LLC
  2015 WL 1346125 (W.D.N.C. Mar. 24, 2015).......................................................39

Remington v. Newbridge Securities Corp.
  2014 WL 505153 (S.D. Fla. Feb. 7, 2014) .........................................................9

Reynolds v. City Express, Inc.,
  2014 WL 1758301 (Mass. Super. Jan. 8, 2014).....................................................5

Ridgeway v. Wal-Mart Stores, Inc.
  2016 WL 4529430 (N.D. Cal. Aug. 30, 2016) .....................................................34

Rivet v. Office Depot, Inc.
  207 F. Supp. 3d 417 (D.N.J. 2016) ............................................................ passim

Rosario v. Valentine Ave. Discount Store, Co.
  2013 WL 2395288 (S.D.N.Y. May 31, 2013) .............................................23, 34, 40

Ruiz v. Affinity Logistics, Corp.
  2009 WL 648973 (S.D. Cal. Jan. 29, 2009)...............................................................2

Ruttenberg v. U.S. Life Ins. Co. in City of New York,
  413 F.3d 652 (7th Cir. 2005)...................................................................................16

Sagar v. Fiorenza,
  2014 WL 5489938 (Mass. Super. Jan. 18, 2014).......................................................5

Scovil v. FedEx Ground Package Sys., Inc.
  886 F. Supp. 45 (D. Me. 2012) ...............................................................................17

Sherman v. Am. Eagle Express, Inc.
  2012 WL 748400 (E.D. Pa. Mar.8, 2012)............................................................6, 19

Slayman v. FedEx Ground Package Sys., Inc.,
  765 F.3d 1033 (9th Cir. 2014)..................................................................................30

Spates v. Roadrunner Transportation Sys., Inc.,
  2016 WL 7426134 (N.D. Ill. Dec. 23, 2016)..................................................4, 25, 32

Stewart v. Abraham,
  275 F.3d 220 (3d Cir. 2001).....................................................................................34

Szczubelek v. Cendant Mortgage Corp.,
  215 F.R.D. 107 (D.N.J. 2003)..................................................................................35

Terrill v. Electrolux Home Products, Inc.
  274 F.R.D. 698 (S.D. Ga. 2011) ...............................................................................9

Thomas v. Matrix Corp. Servs., Inc.,
  2012 WL 3581298 (N.D. Ill. Aug. 17, 2012) ...........................................................4

Thompson v. Bruister & Associates, Inc.
  967 F. Supp. 2d 1204 (M.D. Tenn. 2013)..........................................................21, 33

Troy v. Kehe Food Distributors, Inc.
  276 F.R.D. 642 (W.D. Wash. 2011) ........................................................................17

Tyson Foods, Inc. v. Bouaphakeo
  136 S. Ct. 1036 (2016) ..................................................................................... passim

*Vaquero v. Ashley Furniture Indus., Inc.*
  824 F.3d 1150 (9th Cir. 2016)...........................................................19, 21, 32

*Vargas v. Spirit Delivery & Distribution Servs., Inc.,*
  2017 WL 1115163 (D. Mass. Mar. 24, 2017)................................. passim

*Walney v. SWEPI LP*
  2015 WL 5333541 (W.D. Pa. Sept. 14, 2015).......................................37

*Weiss v. York Hosp.*
  745 F.2d 786, (3d Cir. 1984).................................................................24

*Williams v. Jani–King of Philadelphia Inc.*
  837 F.3d 314 (3d Cir. 2016)......................................................26, 29, 30

*Williams v. Sweet Home Healthcare, LLC*
  2018 WL 637774 (E.D. Pa. Jan. 31, 2018).......................................11, 12

*Yang v. Odom,*
  392 F.3d 97 (3rd Cir. 2004) ...............................................................1, 8

*Young v. Nationwide Mut. Ins. Co.*
  693 F.3d 532 (6th Cir.2012)..................................................................22

**Statutes**

Fed. R. Civ. P. 23 ................................................................... passim

Fed. R. Civ. P. 53 ......................................................................23, 34, 40

N.J.S.A. 43:21–19(i)(6).............................................................................25

New Jersey Wage and Hour Law ("NJWHL")
  N.J.S.A. 34:11-56a .................................................................. passim

New Jersey Wage Payment Law ("NJWPL")
  N.J.S.A. 34:11-4.1b.................................................................. passim

**Other Authorities**

5 Moore's Federal Practice § 23.22[3][a] ...................................................34

7A Charles Alan Wright et al., Federal Practice and Procedure
  § 1764 (3d ed. 2005) .............................................................................34

## I.      INTRODUCTION

Recognizing the concerns expressed by this Court regarding the
ascertainability of a class that included both single-route and multiple-route
driver/contractors when it denied Plaintiffs' initial motion for class certification
"without prejudice," Plaintiffs file this renewed and modified motion which addresses
those concerns. [1]  As described below, when this Court denied Plaintiffs' motion for
certification of a class of Sleepy's delivery contractors,[2] the Court focused on the
Third Circuit's ascertainability requirement.  Byrd v. Aaron's Inc., 784 F.3d 154, 163
(3d Cir. 2015) (quoting Carrera v. Bayer Corp., 727 F.3d 300, 308 n.2 (3d Cir. 2013)
(the ascertainability requirement "does not mean that a plaintiff must be able to
identify all class members at class certification— instead, a plaintiff need only show
that 'class members can be identified.'").  Because Plaintiffs sought a class of both
single-route driver/contractors, as well as multiple-route operators this Court
expressed concern about 1) how to determine which drivers worked for Sleepy's full-

---

[1]      Plaintiffs have a filed a motion to intervene on behalf of Henderson Clarke, Alejandro
Serrano, Aldrin Cevallos, Dante Gomez, Dimitri Celik, Francisco Bautista, Gregorio Diaz, Javier
Duque, Juan Brito, Julio Castillo, Keiron Ottley, Manuel Estrada, Michael Simpson, Richard
Tousett, Ucha Barbakadze, and Wilfredo Rosario.  ECF No. 214.  The motion was filed as a
precautionary measure to protect the interests of class members even though the class members'
claims were tolled pursuant to Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 553 (1974), and
continue to be tolled due to this Court's denial of class certification "without prejudice."  See Yang
v. Odom, 392 F.3d 97, 102 (3rd Cir. 2004) (denial of class certification without prejudice is not a
final ruling and does not stop American Pipe tolling); Charleswell v. Chase Manhattan Bank, N.A.,
2009 WL 1850650, at *16 (D.V.I. June 24, 2009) (same).

[2]      As discussed below and in Plaintiffs' initial motion for class certification, Plaintiffs have
consistently sought only to represent a class of individuals who have contracted with Sleepy's to
perform deliveries and who personally performed deliveries for Sleepy's on a full-time basis.

time; 2) which drivers were subject to improper wage deductions; and 3) which drivers worked more than 40 hours per week without receiving overtime pay. Order at p. 5. The Court held that Plaintiffs' proposed method of ascertaining the class "only fits contractors" who owned and drove one truck.[3] Order at p. 15.

Heeding the Court's guidance, and respecting its view, Plaintiffs now file a more limited renewed motion for class certification for 111 individuals who performed deliveries for Sleepy's pursuant to independent contractor agreements in New Jersey at any time since March 4, 2004, who were single-route operators at all times that they worked for Sleepy's, or who did so for at least six months.[4]

---

[3]     There are two factual issues from the Court's decision that appear to require clarification. First, the Court stated that it could not gauge overtime worked by multi-route contractors because "there is no way of knowing whether the carrier paid drivers overtime." Order at p. 15. This could never be an issue for the Proposed Class because Plaintiffs have only sought to include the driver/contractors who signed an IDA (as an individual or on behalf of an entity) and actually drove on a full-time basis, not the secondary drivers. See Pls.' Mot. for Class Cert at p. 12-13 (ECF No. 193). Now that Plaintiffs propose to further limit the Proposed Class to single-truck contractors, there is no issue. As this Court found when it granted summary judgment in favor of the named Plaintiffs, the "carriers" in this case worked as "drivers" and are, therefore, owed overtime when they worked more than 40 hours a week. See, e.g., Clarke Decl. at ¶ 3 (ECF No. 193-8) (operated under a corporation called HC Trucking, LLC that he was required to form by Sleepy's). Moreover, merely because Sleepy's paid a driver's corporate entity and not the driver directly, will not insulate Sleepy's from liability for unpaid wages. See, e.g., Echavarria v. Williams Sonoma, Inc., 2016 WL 1047225, at *6 (D.N.J. Mar. 16, 2016); Carrow v. Fedex Ground Package Sys., Inc., 2017 WL 1217119, at *6 (D.N.J. Mar. 30, 2017); Spirit Delivery, No. 13-12635, Order of June 8, 2017 (D. Mass. ECF No. 207) (attached as Ex. V) (expressly rejecting the defendant's argument that commonality was not met where the drivers formed corporate entities); Ruiz v. Affinity Logistics, Corp., 2009 WL 648973, *1-2 (S.D. Cal. Jan. 29, 2009) (disregarding the named plaintiff's separate business identity and certifying a class of delivery drivers for employee misclassification claim)

        Second, the Court stated that, for multi-route contractors, there was no way of knowing "whether any carrier reduced any drivers pay by deducting Sleepy's listed deductions." Order at p. 15. As this Court acknowledged, however, this is not an issue when the contractor operates only one truck and drives that truck, which can be easily demonstrated by Sleepy's own documents.

[4]     In the case of a contractor who made deliveries for Sleepy's for less than six months, he would be a class member if he drove only one truck for the entire time he worked for Sleepy's).

As this Court has already stated, Plaintiffs can meet the ascertainability requirement for the Proposed Class of so-called single-route contractors.  Order at p. 15.  Plaintiffs have already produced significant documentary and sworn evidence that shows that many of Sleepy's driver/contractors operated only one truck for Sleepy's and did so on a full-time basis.  <u>See</u> Decl. of Sam Hargrove at ¶ 2-3 (Ex. A); Decl. of Andre Hall at ¶ 10 (Ex. B); Decl. of Henderson Clarke at ¶ 15 (Ex. C); Decl. of Aldrin Cevallos at ¶ 15 (Ex. D); Decl. of Dante Gomez at ¶ 16 (Ex. E); Decl. of Alejandro Serrano at ¶ 15 (Ex. F); Decl. of Michael Simpson at ¶ 16 (Ex. G); Decl. of Wilfredo Rosario at ¶ 16 (Ex. H); Decl. of Keiron Ottley at ¶ 15 (Ex. I); Decl. of Javier Duque at ¶ 16 (Ex. J).  Sleepy's pay statements and driver rosters[5] corroborate this by showing that there are 111 so-called contractors who operated one truck for Sleepy's for at least six months.  Supp. Decl. of Rebecca Shuford at ¶ 4-5 (attached as Ex. M).  Thus, there is more than sufficient data to allow the class of single-route full-time driver/contractors to be ascertained.[6]

---

Furthermore, as discussed below, the class includes delivery drivers who operated one truck and excludes weeks when they operated more than one truck.

Plaintiffs have not filed claims for so-called secondary drivers who drove additional trucks operated by multi-route drivers/contractors and were paid by the multi-route contractors.

[5]    Sleepy's pay records (called Outside Carrier expense Details) show each day that a driver/contractor performed deliveries for Sleepy's, how many deliveries the drivers was assigned and completed, and the amount and reason for any deductions taken from his pay by Sleepy's.  See Sample Outside Carrier Expense Details (attached as Ex. K).  Sleepy's driver roster show who the contractor was and who drove the truck for Sleepy's.  Sample Driver Rosters (Ex. L).

[6]    Sleepy's also maintained security gate logs which clearly show who drove the truck into the facility each morning. Sample Gate Logs (attached as Ex. N).  Indeed, each class members signed in at the security gate when they arrived.  <u>See</u>, <u>e.g.</u>, Supp. Clarke Decl. at ¶ 3 (attached as Ex. O);

3

In addition, Plaintiffs respectfully suggest that they meet the other requirements for class certification under Rule 23(a) and 23(b).  Courts have routinely certified classes of delivery drivers raising claims nearly identical to those raised here under the ABC test.[7]  See, e.g., Costello v. BeavEx, Inc., 810 F.3d 1045, 1060 (7th

---

Cevallos Decl. at ¶ 9-10; Gomez Decl. at ¶ 9-10; Duque Decl. at ¶ 9-10; Simpson Decl. at ¶ 9-10. The gate logs plainly show that single-route drivers personally drove their trucks on a daily basis. For example, Sam Hargrove has testified that he operated one truck for Sleepy's and drove that truck full time.  Hargrove Decl. at ¶ 3.  The pay statements show that between June 1, 2008 and September 1, 2008, Hargrove worked 69 days for Sleepy's.  See Sample Hargrove Documents (Ex. P); Supp. Shuford Decl. at ¶ 9.  The corresponding gate logs show that Hargrove drove his truck and checked in at the security gate 57 of the 59 gate logs that are in Plaintiffs' possession.  Id.  The other 10 days are missing from the copies of the gate logs that were produced for Plaintiffs.

The same can be said based on a similar review of the gate logs and pay statements for Henderson Clarke, who drove only one truck on a full-time basis for Sleepy's.  Clarke Decl. at ¶ 15. Clarke's pay statements show that he worked 84 days between June 19, 2008 and November 2, 2008.  See Sample Clarke Documents (attached as Ex. Q).  Plaintiffs have gate logs for 76 of those days and Clarke is listed as the driver for his truck on all 76 of those days. See id.; Supp. Shuford Decl. at ¶ 11.  In addition, Clarke is listed as the driver of his truck on the gate logs for an additional six days that he was not paid for according to his pay statements.  Id.

Furthermore, Sleepy's maintained delivery load sheets, which listed the cellphone number of the driver of the truck so that Sleepy's could reach him during the day.  See Sample Load Sheet (attached as Ex. R).

[7]     See also  Spates v. Roadrunner Transportation Sys., Inc., 2016 WL 7426134, at *3 (N.D. Ill. Dec. 23, 2016) (certifying class under all three prongs of Illinois ABC test); DaSilva v. Border Transfer of MA, Inc., 2017 WL 5196382, at *12 (D. Mass. Nov. 9, 2017) (certifying class of delivery drivers under Prongs A and C of Massachusetts ABC test who worked for defendant on "a full-time basis" where defendant's "driver records should allow an objective determination of who qualifies under that class requirement, which the certified class defines as 'at least 40 hours per week per week'"); Vargas v. Spirit Delivery & Distribution Servs., Inc., 2017 WL 1115163, at *12 (D. Mass. Mar. 24, 2017) (certifying class of delivery drivers alleging they were misclassified as independent contractors under Massachusetts Prongs A and C); Martins v. 3PD Inc., 2014 WL 1271761, at *12 (D. Mass. Mar. 27, 2014) (certifying class under Massachusetts ABC test); Thomas v. Matrix Corp. Servs., Inc., 2012 WL 3581298, at *3 (N.D. Ill. Aug. 17, 2012) (holding class action remains most efficient way to resolve claim of improper deductions); Ladegaard v. Hard Rock Concrete Cutters, Inc., 2001 WL 1403007, at *9 (N.D. Ill. Nov. 9, 2001) (granting class certification to truck drivers under the Illinois wage payment law); Acosta v. Scott Labor LLC, 2006 WL 27118, at *6 (N.D. Ill. Jan. 3, 2006) (granting class certification on claims under the Illinois wage payment law); O'Brien v. Encotech Constr. Servs., Inc., 203 F.R.D. 346, 353 (N.D. Ill. 2001) (same); Barragan v. Evanger's Dog & Cat Food Co., 259 F.R.D. 330, 334 (N.D. Ill. 2009) (granting class certification for alleged denial of overtime pay); Sagar v. Fiorenza, 2014 WL

4

Cir. 2016), <u>cert. denied,</u> 137 S. Ct. 2289 (2017); <u>accord</u> <u>Brandon v. 3PD, Inc.</u>, 2014 WL 11348985, at *3 (N.D. Ill. Oct. 20, 2014). Moreover, the Seventh Circuit recently held that both Prongs A and B of the Illinois ABC test (which is identical to New Jersey's ABC test) could be resolved on common evidence. <u>Id.</u> at 1060-61, n. 4. Indeed, the question presented under Prong B (whether Sleepy's delivery drivers are working within Sleepy's usual course of business and its places of business) can only be resolved on evidence common to the Proposed Class and can only produce answers that are applicable to each class members.[8]

Further, to address the Court's concern regarding the drivers' claims for improper deductions and overtime the Plaintiffs now seek to certify separate classes for these distinct causes of action: 1) their claim for unlawful deductions under the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1b; and 2) their claim for unpaid overtime under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a.[9] As demonstrated below, both of these classes (for deductions

---

5489938 (Mass. Super. Jan. 18, 2014) (certifying taxi drivers' wage and misclassification claims under Section 148B); <u>Reynolds v. City Express, Inc.</u>, 2014 WL 1758301, at *12 (Mass. Super. Jan. 8, 2014) (certifying claims that delivery drivers were misclassified under Massachusetts ABC test); <u>Driscoll v. Worcester Telegram & Gazette</u>, C.A. No. 2009-43 (Worcester Super. Ct. Aug. 26, 2013) (Krupp, J.) (certifying newspaper delivery drivers' claims of misclassification under Massachusetts ABC test) (Ex. W).

[8]     Indeed, this Court has already held based on common evidence that Sleepy's delivery drivers work within Sleepy's usual course of business or inside its places of business. Tr. of Opinion on S.J. ("Tr. of Op.") dated Oct. 25, 2016 at p. 10 (attached as Ex. X). That ruling is plainly applicable to all of Sleepy's New Jersey drivers, not just the three named Plaintiffs.

[9]     Courts in New Jersey and the Third Circuit have routinely held that it is appropriate to certify separate classes for separate causes of action under Rule 23 <u>Kalow & Springut, LLP v. Commence Corp.</u>, 2011 WL 3625853, at *3 (D.N.J. Aug. 15, 2011) ("[I]t is well settled that a

and overtime) meet the requirements of Rule 23(a) and 23(b).

Lastly the plaintiffs also (as an alternative) ask this court to certify a single-issue class under Rule 23(c)(4), which simply addresses whether the plaintiffs were misclassified as contractors under New Jersey's ABC test, leaving the issue of remedy for other proceedings. This is precisely what the courts did in several similar recent cases. See, e.g., Brandon v. 3PD, Inc., 2014 WL 11348985, at *1 (N.D. Ill. Oct. 20, 2014) (certifying issue of delivery drivers' status as employees under Illinois wage payment law pursuant to Rule 23(c)(4); Martins v. 3PD Inc., 2014 WL 1271761, at *13 (D. Mass. Mar. 27, 2014) (certifying class for liability only and referring matter to special master for determining individual damages).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Since 2004, Sleepy's has contracted with 73 individuals who performed deliveries out of its facility in Robbinsville, New Jersey and who operated only one truck, and an additional 38 contractors who operated one truck for Sleepy's for at least six consecutive months (even though they may have operated multiple trucks for

---

district court can partially certify a class as to a single cause of action within a suit."); Sherman v. Am. Eagle Express, Inc., 2012 WL 748400, at *1 (E.D. Pa. Mar.8, 2012) (certifying claim brought under the Pennsylvania's Wage Payment and Collection Law but denying certification of Minimum Wage Act claims); Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 544 (D.N.J.1999) ("This court ... has previously rejected the notion that class certification under Rule 23 is 'an all-or-nothing proposition' requiring class certification of all causes of action asserted in a single pleading."). Indeed, the Court need only decided "whether Rule 23's predominance requirement is met by examining *each cause of action* independently of one another, not the entire lawsuit []."  Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 441–42 (4th Cir. 2003) (emphasis in original).

Sleepy's at other times).    <u>See</u> Supp. Shuford Decl. ¶¶ 4-5.  As this court has already

found, many Sleepy's driver/contractors drove only one truck for Sleepy's.  <u>See</u> Decl.

of Henderson Clarke at ¶ 15; Decl. of Sam Hargrove at ¶ 2; Decl. of Aldrin Cevallos

at ¶ 15 (operated one truck for entire time he worked for Sleepy's from 2008 to the

present); Decl. of Michael Simpson at ¶ 16 (ran one truck for nearly all the time from

2007 to 2011); Decl. of Dante Gomez at ¶ 16 (ran one truck for most weeks he

worked for Sleepy's from 2005 to the present); Decl. of Alejandro Serrano at ¶ 15

(operated one truck for several years); Decl. of Javier Duque at ¶ 16 (operated one

truck for entire time he worked for Sleepy's from 2007 to 2008).  Indeed, two of the

named Plaintiffs and 10 of the proposed intervenors operated only one truck for at

least six months for Sleepy's.  <u>See</u> Supp. Shuford Decl. at ¶ 13.

Sleepy's driver rosters, pay statements, and gate logs show that 111 contractors

drove full-time for Sleepy's and operated only one truck for at least six months of

their relationship with Sleepy's (or for all the time they performed deliveries for

Sleepy's when they worked for less than six months) since 2004.  <u>See</u> Supp. Shuford

Decl. at ¶¶ 4-5.  This was determined by looking at Sleepy's Outside Carrier Expense

Details, which show the deliveries performed each day by each delivery truck

operated by each contractor.[10]  <u>See</u> Sample Outside Carrier Expense Details (Ex. K).

---

[10]    As demonstrated by Sleepy's Driver Rosters, Sleepy's assigned each contractor a two or
three letter code, such as "5HC" for Henderson Clarke, "5STT" for Sam Hargrove, or "5AP" for
Aldrin Cevallos.  <u>See</u> Supp. Shuford Decl. at ¶ 7 and Ex. 1.  If a contractor operated more than one
truck, Sleepy's assigned these secondary trucks a similar code.  For example, for Plaintiff Marco

Using the Outside Carrier Expense Details, Plaintiffs saw that 73 contractors operated only one truck at all times for Sleepy's and an additional 38 contractors operated only one truck for six consecutive months during the relevant period.  <u>See</u> Supp. Shuford Decl. at ¶¶ 4-5.

This Court has already ruled that the three named Plaintiffs were misclassified by Sleepy's as independent contractors.  Order at ECF No. 170.  The Court correctly held that the named Plaintiffs were employees of Sleepy's despite the fact that, while Sam Hargrove operated only one truck for Sleepy's, both Marco Eusebio and Andre Hall operated two or three trucks at times for Sleepy's.

## III.   ARGUMENT

### A.   The Court Should Grant Plaintiffs' More Limited Motion for Class Certification, Which Plaintiffs Suggest is the Best Mechanism to Address This Court's Concerns.

Plaintiffs are permitted to file a renewed motion for class certification because the Court denied class certification "without prejudice."[11] <u>City Select Auto Sales, Inc.</u> <u>v. David Randall Associates, Inc.</u>, 296 F.R.D. 299, 307 (D.N.J. 2013) (Simandle, J.) (allowing plaintiffs to file a renewed motion for class certification following a denial without prejudice and additional briefing); <u>New Jersey Carpenters Health Fund v.</u>

---

Eusebio, his contractor code was "5ETC."  <u>See</u> Driver Roster attached as Ex. 1 to Supp. Shuford Decl.  At times he operated three trucks for Sleepy's and his secondary trucks were assigned the codes "5ETC 2" and "5ETC3."  <u>Id.</u>

[11]   Moreover, the denial of class certification without prejudice continues the tolling of the statute of limitations for class members that began when the case was filed.  See <u>Yang</u>, 392 F.3d at 102 (citing <u>Am. Pipe</u>, 414 U.S. at 553); <u>Charleswell</u>, 2009 WL 1850650, at *16.

Residential Capital, LLC, 2012 WL 4865174, at *1 (S.D.N.Y. Oct. 15, 2012)

(granting plaintiffs' second motion for class certification of a narrowed proposed

class); Mednick v. Precor Inc., 320 F.R.D. 140, 156 (N.D. Ill. 2017) (same).  In any

event, this Court has "broad discretion to revisit the issue of class certification at any

time before entering final judgment."  Terrill v. Electrolux Home Products, Inc., 274

F.R.D. 698, 700 (S.D. Ga. 2011); see also Culpepper v. Irwin Mortg. Corp., 491 F.3d

1260, 1275 (11th Cir. 2007).  A renewed motion for class certification should not be

treated as a motion for reconsideration, but rather, may be treated as an independent

motion upon narrowing the alleged class or pleadings. Remington v. Newbridge

Securities Corp., 2014 WL 505153, at *13 (S.D. Fla. Feb. 7, 2014).

     Here, Plaintiffs have narrowed the proposed class to include *only* drivers who

drove single routes for Sleepy's.  In addition, Plaintiffs are moving to certify separate

causes of action – deductions and overtime.  See Gunnells, 348 F.3d at 441–42 ("[a]ll

other courts have explicitly or implicitly endorsed an interpretation of (c)(4) that

considers whether Rule 23's predominance requirement is met by examining *each*

*cause of action* independently of one another, not the entire lawsuit, as the dissent

would.") (emphasis in original).  In the alternative, Plaintiffs are moving for an even

more limited class limited to the issue of whether Sleepy's drivers/contractors are

employees or independent contractors pursuant to Rule 23(c)(4).

     As demonstrated below, Plaintiffs' proposed classes are ascertainable and

otherwise meets the requirements of Rule 23.

9

**B.      The Class of Single-Route Contractors Are Easily Ascertainable For Both Plaintiffs' Deductions and Overtime Claims.**

It is undisputed that a large number (at least 73) of the individuals who contracted with Sleepy's operated one truck and used that truck to personally perform deliveries for Sleepy's on a full-time basis.[12]  The Third Circuit has held that a class must be "currently and readily ascertainable based on objective criteria." Marcus v. BMW of N. Am. LLC, 687 F.3d 583, 593 (3d Cir. 2012).  The party seeking certification must demonstrate that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition," but need not specifically be able to identify all class members; it is sufficient to show "that class members *can* be identified." Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015) (emphasis in original).

Recently, in City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc, 867 F.3d 434 (3d Cir. 2017), the Third Circuit addressed the ascertainability requirement.  The Court was faced with the issue of whether an over-inclusive database of customers, some of whom received allegedly unlawful fax communications, failed the ascertainability requirement where "there [was] no evidence that the … fax was sent to every customer who had a fax number in the database during the relevant time

---

[12]      See Hargrove Decl. at ¶ 3; Hall Decl. at ¶ 10; Clarke Decl. at ¶ 15; Serrano Decl. at ¶ 15; Castillo Decl. at ¶ 16; Cevallos Decl. at ¶ 15; Gomez Decl. at ¶ 16; Celik Decl. at ¶ 16; Duque Decl. at ¶ 16; Ottley Decl. at ¶ 15; Simpson Decl. at 16; Barbakadze Decl. at ¶ 16 (attached as Ex. T).

10

period." Id. at 441.  The court, noting that the plaintiffs had limited the proposed

class definitions to the available records, held that it could be acceptable under the

ascertainability standard to conduct a factual inquiry into "whether a particular

[customer] in the database received the … fax on one of the dates in question" in part

based on affidavits. Id. at 441–42.  The Court further held that "Plaintiffs need not, at

the class certification stage, demonstrate that a single record, or set of records,

conclusively establishes class membership." Id.  Rather, "[a]ffidavits, in combination

with records or other reliable and administratively feasible means, can meet the

ascertainability standard."[13] Id.

In denying Plaintiffs' motion for class certification without prejudice (ECF No.

193), this Court expressed concerns with Plaintiffs' ability to ascertain the potential

class because Plaintiffs' sought to certify a class of both single- and multiple-route

driver/contractors (meaning contractors who drove one truck but had other non-

contractor drivers drive other routes for them.).  ECF No. 213 p. 15.  The Court

determined that, because of questions about whether contractors who employed other

---

[13]       In yet another recent decision, Williams v. Sweet Home Healthcare LLC, the court relied on
City Select in holding that "where records are deficient" because they fail to identify the exact job
classification of potential class members, "they may be supplemented with affidavits from class
members." Williams v. Sweet Home Healthcare, LLC, 2018 WL 637774, at *8 (E.D. Pa. Jan. 31,
2018). See also McNamee v. Nationstar Mortg., LLC, 2018 WL 1557244, at *4 (S.D. Ohio Mar.
30, 2018) ("whether a class is ascertainable is a totally distinct inquiry from whether class
membership requires an individualized inquiry").  Thus, a class is ascertainable, where, as here,
Sleepy's records plainly show which contractors drove their delivery trucks, what deductions
Sleepy's took from their pay, and approximately how many hours the drivers worked each day.

drivers may or may not have paid overtime or applied Sleepy's deductions to their

secondary drivers or helpers,[14] "the methodology provided by Plaintiffs only fits

contractors with only one driver."  Id.  Plaintiffs now propose a more limited class

that include only contractors who operated one truck and who personally made

deliveries using their truck—a total of just 111 contractors.  To the extent that some

of these class members became multi-route operators at some point does not

eliminate them from the class but eliminates their damages during weeks when they

ran multiple trucks.  Moreover, whether class members operated multiple trucks in a

week is clearly identifiable in Sleepy's pay statements because they list more than

one truck being operated by that contractor.[15]

## 1. The Court Can Ascertain Which Single-Route Contractors Worked Full-Time for Sleepy's.

It is already apparent from the declarations Plaintiffs have submitted that many

of Sleepy's contractors who operated one truck for Sleepy's, did so on a full-time

---

[14]     Based on the Court's statements in its denial of class certification without prejudice, Plaintiffs wish to clarify that the deductions challenged in this case were made by Sleepy's from the contractors' pay and are easily determinable by looking at the Outside Carrier Expense Details. Plaintiffs are not seeking deductions made from secondary drivers. Moreover, since the Proposed Class is now limited to only single-route drivers/contractors, the class members had no secondary drivers from whom to make deductions.  In other words, this entire issue is resolved if we limit the class to single-truck drivers.

[15]     Class members who may qualify for only some weeks would not be prejudiced from seeking other recourse as to the weeks in which they employed other drivers.  See Williams, 2018 WL 637774, at *8 ("The ascertainability requirement does not impose an 'underinclusivity' standard; individuals who are injured by a defendant but are excluded from a class are simply not bound by the outcome").

basis and were entirely reliant on Sleepy's for their income.  See Hargrove Decl. at ¶ 4-5; Hall Decl. at ¶ 3-4; Clarke Decl. at ¶ 2, 4-5; Serrano Decl. at ¶ 2, 4-5; Castillo Decl. at ¶ 16; Cevallos Decl. at ¶ 2, 4-5; Gomez Decl. at ¶ 2, 4-5; Duque Decl. at ¶ 2, 4-5; Ottley Decl. at ¶ 2, 4-5; Simpson Decl. at ¶ 2, 4-5; Barbakadze Decl. at ¶ 2, 4-5. Moreover, Sleepy's driver rosters and pay statements also list which contractors worked for Sleepy's, and the number of trucks they operated for Sleepy's on a given day.  See below:

### Excerpt of Driver Roster (Exhibit L)

Sleepy's Codes for Marco Eusebio and Multiple Trucks

| DEL CO | OWNER | DRIVER NAME | HELPER 1 NAME |
|---|---|---|---|
| AS OF 08/14/08 | | | |
| | | NAMES IN BLUE ARE NEW | |
| | | | |
| DEL CO | OWNER | DRIVER NAME | HELPER 1 NAME |
| 5ACB | FRANCISCO BAUTISTA | RAMON ESTRELLA | JOEL CHIROX |
| 5ACB2 | | SHOFRE JARAMILLO | LEONEL BAUTISTA |
| 5ACB3 | | FRANCISCO BAUTISTA | GERARDO BALLESTEROS |
| 5AG | PEDRO EUSEBIO | PEDRO EUSEBIO | JOSE FAMILIA |
| 5AG2 | | SANTIAGO EUSEBIO | FELIPE REYES |
| 5AH | ANDRE HALL | ANDRE HALL | PATTERSON HINDS |
| 5ALE | Alejandro Serrano | Alejandro Serrano | Jose Guardado |
| 5ETC | MARCO A. EUSEBIO ALMONT | MARCO A. EUSEBIO ALMONTE | WILCOR JEREZ |
| 5ETC2 | | FELIPE REYES | JUNIOR SANCHEZ |
| 5ETO | Thomas Eletto | CARLOS ALARCON | FRANCISCO COLINDRES |
| 5ETO7 | | Maximilliano Rodriguez | JOSE CRUZ |

**Excerpt from Outside Carrier Expense Detail of ETC (Marco Eusebio)**



Thus, the example above, it is plain from the Driver Rosters that Plaintiff

Marco Eusebio contracted with Sleepy's and operated two trucks labeled as "5ETC"

and "5ETC2" and that he drove the truck labeled ETC.[16]  See Driver Roster attached

as Ex. L.  The excerpted pay statements further show that the truck labeled ETC

performed deliveries for Sleepy's in January 2006 and that, during the week of

---

[16]     Pursuant to this Court's ruling on summary judgment, Marco Eusebio has been held to be an employee of Sleepy's under the ABC test.  ECF No. 170.  Moreover, even though he would not be a class member, a review of the driver rosters and Outside Carrier Expense Details demonstrates that named Plaintiffs Sam Hargrove and Andre Hall as well as 10 of the Proposed Intervenors (Henderson Clarke, Dante Gomez, Javier Duque, Juan Brito, Michael Simpson, Ucha Barbakadze, Alejandro Serrano, Aldrin Cevallos, Dimitri Celik, and Gregorio Diaz) operated one truck for at least six months and, thus, are included in the Proposed Class.  Supp. Shuford Decl. at ¶ 13.

January 11, 2006, Marco Eusebio operated two trucks for Sleepy's.  In addition, the pay statements show how many deliveries each truck was assigned each day and how many they completed, how much Sleepy's paid that contractor, and how much Sleepy's took in deductions, as well as the date and reason for the deduction.[17]  <u>See</u> attached Exs. K, P, Q.  Moreover, if a cross-check is needed Sleepy's gate logs show who was driving the truck on any given day because the drivers must check in with security at the gate of the Sleepy's facility in Robbinsville, New Jersey.[18]  <u>See</u>, <u>e.g.</u>, Supp. Shuford Decl. at ¶¶ 10-12.    For example, Sam Hargrove has testified that he drove only one truck for Sleepy's.  Hargrove Decl. at ¶ 4-5.  The pay statements show that Hargrove worked 69 days from June 19, 2008 to November 1, 2008, while a review of gate logs for 59 of those days (10 days are missing from the scanned copies Plaintiffs have), shows that Hargrove personally drove his truck on 57 of those 59 days.  <u>See</u> Supp. Shuford Decl. at ¶ 9; Sample Hargrove Documents (Ex. P). The same can be said when reviewing the same records for Henderson Clarke.  Clarke testified that he drove only one truck for Sleepy's; Clarke's pay statements show that he performed deliveries for Sleepy's on 84 days from June 19, 2018 to November 2,

---

[17]    The same rosters show, for example, that Andre Hall was the owner of "AH" and as the driver of AH's only truck.  Id.  The same goes for Aldrin Cevallos ("AP"), Ucha Barbakadze ("GES"); William Durham ("JMD"); Michael Simpson ("MSS"); Paul Afonso ("MTL"); Sam Hargrove ("STT").  <u>See</u> Sample Driver Rosters (Ex. L).

[18]    Plaintiffs' counsel inspected Sleepy's gate logs in 2011.  Decl. of Anthony Marchetti, Jr. at ¶ 3 (attached as Ex. S).  Attorney Marchetti traveled to the Sleepy's facility in Robbinsville and copied a representative sample of gate logs that corresponded to the time that the three named Plaintiffs worked for Sleepy's in 2008 and 2009.  <u>Id.</u> at ¶ 6.

2008; and a review of the gate logs for 76 of those days (eight were missing) shows that Clarke personally drove his truck on all 76 days.[19]  Sample Clarke Documents (Ex. Q); Supp. Shuford Decl. at ¶ 11.

As the Court stated, Plaintiffs can show which drivers were single-route contractors for Sleepy's.[20]  Order at p. 15.   Courts have routinely certified classes of workers who allege they were misclassified as independent contractors and worked for the putative employer full-time.[21]  See, e.g., DaSilva v. Border Transfer of MA,

---

[19]    In addition to the gate logs, driver rosters, and Outside Carrier Expense Details here, Sleepy's listed each driver's individual cellphone number on the manifest of the daily delivery route for each truck (see, e.g., Manifest for Henderson Clarke at ECF No. 193-21).

[20]    Sleepy's required its drivers to work full time.  Every Sleepy's driver who has provided evidence in this case, has stated that when he was personally working for Sleepy's, he could not work for any other company because he spent his whole day performing the deliveries assigned to him by Sleepy's.  See, e.g., Simpson Decl. at ¶ 4-5; Clarke Decl. at ¶ 4; Estrada Decl. at ¶ 4; Serrano Decl. at ¶ 4 Hargrove Decl. at ¶ 5; Cevallos Decl. at ¶ 4; Barbakadze Decl. at ¶ 4; Duque Decl. at 4.
    Moreover, Sleepy's Independent Contractor Agreements "required that the deliverers could not perform any other business while on duty with Sleepy's."  Tr. of Op. at p. 8; Hargrove IDA, ¶ 2 ("you agree that while performing deliveries for Sleepy's you will not carry merchandise for any other business until you have finished the delivery manifest given to you by Sleepy's."); Eusebio Trucking IDA, ¶ 2; Hall IDA, ¶ 2.  Indeed, when Sleepy's discovered that a driver performed deliveries for another business on his day off, Sleepy's told the driver he could not make deliveries for another business and suspended him. Decl. of Estrada at ¶ 4.

[21]    In denying class certification without prejudice, the Court focused on the hours class members worked.  Order at p. 14.  Federal regulations define "full-time" employment as approximately 30 hours a week or even less.  73 FR 78020-01; Ruttenberg v. U.S. Life Ins. Co. in City of New York, 413 F.3d 652, 666 (7th Cir. 2005) (term of insurance policy defining "full time" worker as employee who worked more than 30 hours per week).  Because of the 12-hour minimum workday assigned by Sleepy's, the drivers worked more than 30 hours a week and were not able to perform deliveries for anyone else.  Serrano Decl. at ¶ 18; Castillo Decl. at ¶ 4; Bautista Decl. at 19; Clark Decl. at ¶ 4; Estrada Decl. at ¶ 4; Rosario Decl. at ¶ 4; Decl. of Andre Hall at ¶ 5; Decl. of Sam Hargrove at ¶ 5; Decl. of Marco Eusebio at ¶ 5.  Indeed, when Sleepy's discovered that a driver performed deliveries for another business on his day off, Sleepy's told the driver he could not make deliveries for another business and suspended him. Decl. of Estrada at ¶ 4.

Inc., 2017 WL 5196382, at *12 (D. Mass. Nov. 9, 2017) (certifying class of delivery drivers who worked for defendant on "a full-time basis" where defendant's "driver records should allow an objective determination of who qualifies under that class requirement, which the certified class defines as 'at least 40 hours per week per week'"); Scovil v. FedEx Ground Package Sys., Inc., 886 F. Supp. 45, 47 (D. Me. 2012) (certifying class of "all persons who executed a standard Operating Agreement . . . and worked full time as delivery drivers in Maine"); Troy v. Kehe Food Distributors, Inc., 276 F.R.D. 642, 651 (W.D. Wash. 2011) (certifying class on behalf of only full-time sales representatives).

### 2. The Court Can Ascertain What Deductions Were Suffered by the Single-Route Contractors.

The record in this case clearly demonstrates that all of Sleepy's contractors suffered the same recurring sets of deductions for damage claims, customer claims, and various fines.  See, e.g., Simpson Decl. at ¶ 15; Gomez Decl. at ¶ 15; Serrano Decl. at ¶ 14; Castillo Decl. at ¶ 15; Bautista Decl. at ¶ 14; Clarke Decl. at ¶ 14; Duque Decl. at ¶ 15; Simpson Decl. at ¶ 15; Ottley Decl. at ¶ 14; Zezas Dep. 3/18/16 at p. 71 ("Deductions are taken for failures to provide the service that we've outlined.") (see ECF No. 193-13).  Furthermore, the amounts of the deductions are plainly obvious from Sleepy's own Outside Carrier Expense Details, which show

what deductions were made from which trucks.[22]  See Sample Outside Carrier

Expense Details; Zezas Dep. 3/18/16 at p. 71 (all deductions are included on

contractors' pay statements).

In its denial of class certification without prejudice, this Court appeared to be

concerned about how to connect the deductions made by Sleepy's with actual

deductions taken from the pay of the class members.  Order at p. 7 ("there is no way

of knowing whether Marco Eusebio reacted to those deductions by taking money out

of the wages that his carrier paid him, not is there a way of knowing how he dealt

with the deduction"), 15 (questioning "whether any carrier reduced any drivers pay

by deducting Sleepy's listed deductions").  But, as this Court recognized, this is only

a potential issue with multiple-route contractors.  Identifying the deductions taken

from contractors when there is only one truck which is driven by the contractor is a

matter of simple arithmetic.[23]  As the Court held, "the methodology provided by

Plaintiffs only fits contractors with only one driver."  Order at p. 15.  Thus, the

Proposed Class is ascertainable for the purpose of Plaintiffs' claims under the New

---

[22]     The deductions are easily added up given the available documents. For example, the same Outside Carrier Expense Detail for Henderson Clarke shows that on August 1, 2009, HC, meaning Clarke, performed 12 of 12 assigned deliveries for Sleepy's. Ex. D. It also shows that Sleepy's issued a deduction of $200 from HC for having allegedly falsified Agentek data, which tracks the times of deliveries and signatures from customers. As discussed above, the rosters demonstrate the Henderson Clarke is the owner of HC and is the only authorized driver.

[23]     Indeed, the deductions are easily added up given the available documents. For example, the same Outside Carrier Expense Detail for Marco Eusebio show that on August 5, 2008, Sleepy's made a deduction of $100 for an allegedly dirty box and deducted $72 on August 13, 2008 for uniforms.  See Ex. K.

Jersey Wage Payment Law.

> ### 3. The Court Can Ascertain Which Single-Route Contractors Worked More Than 40 Hours Per Week Without Receiving Overtime Pay.[24]

In denying class certification without prejudice, the Court noted that "there is no way of knowing whether the carrier paid drivers overtime." Order at p. 15. As discussed above, this should not be a concern where the class consists solely of singe-route contractors and those contractors drove their single truck full time. There is no dispute that Sleepy's did not pay its contractors overtime under any circumstances.

Most importantly, the issue of how much overtime the class members worked is an issue of damages, not ascertainability. Vaquero v. Ashley Furniture Indus., Inc., 824 F.3d 1150, 1155 (9th Cir. 2016) ("Under Tyson Foods and our precedent, therefore, the rule is clear: the need for individual damages calculations does not, alone, defeat class certification."). Yet, Sleepy's records can be used to show the days each class members worked, when they arrived at the Robbinsville facility,[25] how

---

[24]     Plaintiffs have separate claims for deductions under the NJWPL and for overtime under the NJWHL. Thus, if the Court concluded that, for example, it may ascertain class members for the purposes of evaluating their claims for deductions, but not for their overtime claims, the Court may simply certify one or both of the claims. Sherman v. Am. Eagle Exp., Inc., 2012 WL 748400, at *8 (E.D. Pa. Mar. 8, 2012) (permitting class certification with respect to particular causes of action when appropriate); Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 441 (4th Cir.2003) (Rule 23 permits courts to separate multiple causes of action for certification provided other certification requirements are met with respect to that cause of action); see also Bogosian v. Gulf Oil Corp., 561 F.2d 434, 453 (3d Cir.1977) (reversing decision denying certification and noting district court should have considered certifying each cause of action separately); Kalow & Springut, LLP v. Commence Corp., 2011 WL 3625853, at *3–4 (D.N.J. Aug.15, 2011) (collecting cases)).

[25]     The Court held that the gate logs were "not fully completed" because, the Court found, they did not always show what time the truck entered or left the facility. Order at p. 14. Some gate logs do not list the time of arrival for each driver. A reasonable explanation is that the security guard

many deliveries they were assigned and completed each day, and the time they performed each delivery.[26]  Moreover, Plaintiffs have put forward evidence that they spent one to two hours at the facility each morning checking in at the security gate, waiting for a load sheet, making returns, loading their trucks, waiting for a Sleepy's employee to inspect their loaded truck, and waiting for approval to leave the facility and begin making deliveries.  See, e.g., Clarke Decl. at ¶ 9; Simpson Decl. at ¶ 9; Cevallos Decl. at ¶ 9; Ottley Decl. at ¶ 8.  Thus, whether the so-called contractors made deliveries more than 40 hours a week, without receiving overtime pay, is plainly discernable.

Furthermore, to the extent that Sleepy's records do not accurately document all hours worked, Sleepy's cannot avoid class certification of overtime claims because of a problem Sleepy's itself created.  Under the Supreme Court's ruling in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1945), to the extent that Sleepy's did not record the driver's hours, the class can rely on a representative sample of their hours based on their own testimony, otherwise no misclassified workers could bring overtime claims. Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1046–47 (2016)

---

simply recorded the same time for drivers who arrived at the same time.  This would explain why the times listed are sequential, as the security guard wrote down the names of the drivers as they came in each day, only putting a dash for groups of drivers who arrived, essentially, simultaneously. Perhaps there is another explanation, but whether the documents could be used to establish starting or stopping times does not affect the fact that the logs show who drove each truck each day.

[26]     Sleepy's kept scanner data on the first and last stop times for the drivers.  See Sample Agentek Logs (see ECF No. 193-23).

(following <u>Mt. Clemens</u>, plaintiffs may use representative samples to establish "the employees' hours worked in a class action"); <u>Olibas v. Native Oilfield Servs</u>., 104 F. Supp. 3d 791, 800 (N.D. Tex. 2015) (under <u>Mt. Clemens</u>, "the proper course of action is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work").  Furthermore, courts have permitted otherwise ascertainable classes to be certified where some clarification is needed from putative class members through affidavits or claim forms. <u>Melgar v. CSk Auto, Inc.</u>, 2015 WL 9303977, at *11 (N.D. Cal. Dec. 22, 2015), aff'd, 2017 WL 836595 (9th Cir. Mar. 3, 2017); <u>Vaquero v. Ashley Furniture Indus., Inc.</u>, 824 F.3d 1150, 1155 (9th Cir. 2016) ("Under <u>Tyson Foods</u> and our precedent, therefore, the rule is clear: the need for individual damages calculations does not, alone, defeat class certification."); <u>Boundas v. Abercrombie & Fitch Stores, Inc.</u>, 280 F.R.D. 408, 417-18 (N.D. Ill. 2012) (rejecting challenge to ascertainability and noting that while the class included individuals who threw away their gift cards because they had been told the balances were voided, which was "not as objective [an inquiry] as actually holding a physical card," those individuals who threw away their cards "will be required to submit an appropriate affidavit, which can be evaluated during the claims administration process").  Accordingly, courts have routinely certified classes where workers claimed they were not independent contractors, and thus the putative employer did not track overtime hours. <u>Thompson v. Bruister & Associates, Inc.</u>, 967 F. Supp. 2d 1204, 1220 (M.D. Tenn. 2013) (denying motion to decertify class of

21

cable installers); Gomez v. Tyson Foods, Inc., 295 F.R.D. 397, 400–02 (D.Neb.2013)

(certifying class under Rule 23); Jackson v. Bloomberg, L.P., 2014 WL 1088001, at

*15 (S.D.N.Y. Mar. 19, 2014).  See also Rivet, 207 F. Supp. 3d at 431 (common

questions regarding classification as overtime exempt employees predominate where

assistant managers all worked pursuant to the same store guidelines).

     In the employment context, courts have held that where a defendant's failure to

keep accurate records creates a problem for ascertainability, it is particularly

inappropriate to deny class certification on that basis.  Arredondo v. Delano Farms

Co., 301 F.R.D. 493, 545 (E.D. Cal. 2014) (quoting Young v. Nationwide Mut. Ins.

Co., 693 F.3d 532, 540 (6th Cir.2012) ("It is often the case that class action litigation

grows out of systemic failures of administration, policy application, or records

management that result in small monetary losses to large numbers of people. To

allow that same systemic failure to defeat class certification would undermine the

very purpose of class action remedies.").  The Sixth Circuit's logic in Young should

apply equally here, where Sleepy's chose to misclassify its delivery drivers and did

not keep more accurate records of who worked and for how long.  To deny class

certification because of Sleepy's poor record-keeping would nullify the New Jersey

wage laws.

     Moreover, if this Court concludes that it cannot ascertain class members for

overtime claim for the purposes of liability only, it may still certify a class for the

purpose of determining whether the class of drivers were misclassified as

independent contractors and then may appoint a special master to determine

individual damages under Fed. R. Civ. P. 53(a).  See, e.g., Leyva, 716 F.3d at 515;

Healy v. Int'l Bhd. of Elec. Workers, Local Union No. 134, 296 F.R.D. 587, 2013 WL

4494685 at *11 (N.D. Ill. Aug.22, 2013); Rosario v. Valentine Ave. Discount Store,

Co., 2013 WL 2395288 at *9 (S.D.N.Y. May 31, 2013);Martins, 2014 WL 1271761,

at *13.

> **C.  Plaintiffs' Claims for Deductions and Overtime Both Satisfy Rule 23(a) and 23(b)'s Requirements.**
>
> > **1.  Plaintiffs Meet the Commonality Requirement Because their Deductions and Overtime Claims are Based on Questions of Fact and Law that are Common to the Class and, Indeed, Are Identical Throughout**

Plaintiffs readily satisfy the commonality requirement because the claims of

the putative class members for deductions and overtime arise from a common

scheme, specifically Sleepy's uniform policy of misclassifying its delivery drivers in

New Jersey as independent contractors.  See, e.g., Rivet v. Office Depot, Inc., 207 F.

Supp. 3d 417, 429 (D.N.J. 2016) ("Plaintiffs meet the commonality requirement

because all individuals within the" proposed class were subject to the same corporate

policy of denying overtime pay to assistant managers).  Rule 23(a)(2) requires the

identification of an issue that is by its nature "capable of classwide resolution – which

means that determination of its truth or falsity will resolve an issue that is central to

the validity of each one of the claims in one stroke." Dukes v. Wal-Mart Stores, Inc.,

131 S. Ct. 2541, 2551 (2011).

The commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. In re "Agent Orange" Prod. Liab. Lit., 818 F.2d 145, 166–67 (2d Cir.1987); Weiss v. York Hosp., 745 F.2d 786, 808–09 (3d Cir. 1984).  "Because the requirement may be satisfied by a single common issue, it is easily met." Baby Neal v. Casey, 43 F.3d 48 at 56 (3d Cir. 1994) (citation omitted).   As discussed above, courts have routinely held that delivery drivers who were uniformly classified as independent contractors and subject to company-wide pay policies that deprived them of their wages plainly satisfy the commonality requirement.[27] See footnote 8.

Moreover, courts have routinely held that the ABC test, which is utilized under the NJWPL and NJWHL, can plainly be resolved on common evidence.[28]

---

[27]    This Court may find commonality even if there are individual issues regarding the amounts of damages and who is entitled to recover, as these questions arise in terms of typicality and predominance, not commonality.  See Marcus, 687 F.3d at 597 ("Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class members.") (internal quotations and alterations omitted); Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir. 1988) ("Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be *common* to the class"); Kalow & Springut, LLP, 272 F.R.D. at 403-04 ("while there may be factual differences amongst the proposed class members, these differences do not destroy commonality"); Martins, 2013 WL 1320454, * 6 ("individual issues regarding the amounts of damages of drivers alleging misclassification arise in terms of typicality and predominance, not commonality").

[28]    Under the ABC test, an individual providing a service is presumed to be an employee unless the employer can show:

(A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

Even though class certification must be granted if any one of the three prongs of the ABC can be resolved on common evidence, this Court can resolve all three prongs on common evidence.  See, e.g., Roadrunner, 2016 WL 7426134, at *3 ("Each part of the [ABC] test entails evidence that will apply equally to all class members."); Spirit Delivery, 2017 WL 1115163, at *12 (certifying class of delivery drivers alleging they were misclassified as independent contractors under Massachusetts Prongs A and C); Brandon, 2014 WL 11348985, at *3  (certifying class of delivery drivers under Illinois ABC test); Martins, 2014 WL 1271761, at *12  (certifying class under Massachusetts Prong B).  However, "if just one of the criteria is provable by common evidence, this question is amenable to class treatment."  Roadrunner, 2016 WL 7426134, at *3 (citing BeavEx, 810 F.3d at 1060).

### 2. Common Questions Predominate Over Questions Affecting Individual Class Members for Both Their Deductions and Overtime Claims.

Rule 23(b)(3) "requires that [] common questions of law or fact predominate (predominance)[]."  In re Cmty. Bank of N. Va., 622 F.3d 275, at 291(3rd Cir. 2010), as amended (Oct. 20, 2010) (quoting Fed.R.Civ.P. 23).  Predominance requires that common issues predominate over issues affecting only individual class members. In

---

(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

N.J.S.A. 43:21–19(i)(6).  The test is conjunctive, thus, "the failure to satisfy any one of the three criteria results in an 'employment' classification."  Hargrove v. Sleepy's, LLC, 220 N.J. 289, 305 (N.J. 2015).

re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 528 (3d Cir.2004).  "[G]ranular

uniformity between class members is not required for establishing predominance."

Rivet, 207 F. Supp. 3d at 431–32.  Instead, Plaintiffs' claims must be "capable of

proof at trial through evidence that is common to the class rather than individual to its

members."  Id. (citation omitted).  As the Supreme Court recently held, a common

question is one where "the same evidence will suffice for each member to make a

prima facie showing [or] the issue is susceptible to generalized, class-wide proof."

Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016).  Indeed, "the action

may be considered proper under Rule 23(b)(3) even though other important matters

will have to be tried separately, such as damages or some affirmative defenses

peculiar to some individual class members.'"  Id.

    Here, the Plaintiffs' independent contractor misclassification and unpaid wage

claims are the central issues in this case that predominate over any individualized

issues.  As discussed above, common questions regarding the drivers' proper

employment classification will predominate.  Indeed, the Third Circuit held that

common questions regarding worker's classification as independent contractors

predominated where the defendant's "franchise agreement, policies manual, and

training manual are common to the class." Williams v. Jani–King of Philadelphia

Inc., 837 F.3d 314, 321–22 (3d Cir. 2016).  Such predominance persisted even though

some class members had no employees working under them, while some class

members had dozens of their own employees.  Id.  Here, the question is much simpler

because all of the class members operated one truck for at least six months while performing Sleepy's deliveries.

Common questions regarding liability for deductions and overtime plainly predominate in this case, for the same reasons that the proposed class satisfied Fed. R. Civ. P. 23(a)'s commonality requirement: the core claims here are systematic misclassification which resulted in unlawful deductions and failure to pay overtime. See Spirit Delivery, 2017 WL 1115163, at *13 (finding that common issues predominated in nearly identical case where delivery drivers claimed that they were misclassified as independent contractors and subject to unlawful deductions); Brandon, 2014 WL 11348985, at *12-15 (finding predominance satisfied because "the independent contractor versus employee issue at the heart of this case can be decided based solely on common evidence relating to prong two of the IWPCA's independent contractor exemption); Martins, 2013 WL 1320454, at *8 (common issue of defendant's misclassification of delivery drivers as independent contractors predominates); Phelps v. 3PD, Inc., 261 F.R.D. 548 at 559-63 (D. Or. 2009) (finding issues common to defendant's drivers predominate). See also Rivet, 207 F. Supp. 3d at 431 (common questions regarding classification as overtime exempt employees predominate where managers all worked pursuant to the same store guidelines).

As the Seventh Circuit held in weighing class certification under an identical ABC test, class certification is proper as long as common questions predominate for any one of the three prongs. The court held that, under the ABC test, "if the

employer cannot satisfy *just one prong* of the test, the inquiry into employment status ends. Because Plaintiffs have shown that common evidence will resolve prong two, they have made a prima facie showing that they *can* win their case based on evidence common to the class." <u>BeavEx</u>, 810 F.3d at 1060 (emphasis in original).  Indeed, the Seventh Circuit held that Rule 23(b)(3) could be satisfied on Prong B alone.  <u>Id</u>. at 1060 ("There is no requirement that the district court blind itself to the conjunctive structure of the [ABC test].").

Regardless, common questions predominate under all three prongs of the ABC test.  Indeed, this Court already resolved all three prongs on common evidence in when granting summary judgment on behalf of the named Plaintiffs on all three prongs.  ECF No. 170.  There can be no doubt that Prong B, which requires the employer to show the work was performed outside its usual course of business or usual places of business, can only be resolved on common evidence.  In <u>BeavEx</u>, the Seventh Circuit found that, when delivery drivers challenged their classification as independent contractors under Illinois' identical ABC test, predominance could be satisfied on Prong B as it "requires common evidence about [the defendant's] business model, which is applicable to all class members."  <u>Id</u>.  Predominance is met, therefore, because "regardless of which party wins [on Prong B], the common answer on prong two 'represent[s] a significant aspect of [a] case and . . . can be resolved for members of [a]class in a single adjudication.'"  <u>Id</u>. (quoting <u>Messner v. Northshore University Healthsystem</u>, 669 F.3d 802, 815 (7th Cir. 2012)).

Even though it is not necessary to show that common questions predominate under any other prong, courts have routinely held that common questions plainly predominate under Prong A.  See BeavEx, 810 F.3d at 1060 (finding that the district court erred in holding that prong one could not be decided by common evidence); Border Transfer of MA, 2017 WL 5196382, at *7 (holding that court could resolve both right to control as a matter of contract and right to control as a matter of fact based on common evidence).  To prevail on Prong A, Sleepy's is required to show it retained no control over its drivers under their contracts and in fact.  The Third Circuit held that control "can be determined by examining the documents alone." Jani–King, 837 F.3d at 324.  Plainly, the Court can resolve the control under contract issue solely by looking at Sleepy's uniform IDA.  Border Transfer of MA, 2017 WL 5196382, at *7 (citing Jani–King of Phila. Inc., 837 F.3d at 321–22) (recognizing that "the Third Circuit decided that the extent of a company's right to control its workers could be resolved by examination of the franchise agreement, policies manual, and training manual that were common to the class").

Moreover, control "in fact" inquiry can also be resolved on common evidence. BeavEx, at 160-61; Border Transfer of MA, 2017 WL 5196382, at *7 ("the question at this stage is whether the level of actual control can be determined by common evidence on how Border Transfer dealt with its drivers, or whether different putative class members were treated differently").  Here, Sleepy's control in fact can be assessed solely by examining its training manual, weekly newsletters, and delivery

29

manifests which required Sleepy's drivers to perform deliveries in a specific order

with time windows dictated by Sleepy's.  See Jani–King of Philadelphia Inc., 837

F.3d at 324 (holding that the control test "*can* be determined by examining the

documents alone") (emphasis in original).  Moreover, Sleepy's itself has testified that

it seeks to ensure that all of its drivers are "doing the job the Sleepy's way." Zezas

Dep. 3/24/11 at 44.  Thus, the answer to the question of whether the "Sleepy's way"

is enough to show control, will be the same for each class member.[29]

Furthermore, common questions predominate under Prong C's "independently

established business test."  See Border Transfer of MA, 2017 WL 5196382, at *9 (D.

Mass. Nov. 9, 2017) ("Whether contractors with Border Transfer had the opportunity

to engage in an independently established business is, as the plaintiffs argue,

susceptible to common proof.").  Under Prong C, Sleepy's must show that, even

though contractors were supposedly free to make deliveries for other companies, that

drivers actually worked for other businesses.  N. Jersey Media Grp., Inc. v. Bd. of

Review, 2014 WL 3537947, at *4 (N.J. Super. Ct. App. Div. July 18, 2014).  The

record demonstrates that, as a class, this was not possible because contractors who

operated one truck for Sleepy's and drove that truck on a full-time basis relied on

---

[29]     As discussed above, courts have routinely resolved the issue of control based on common
evidence.  See, e.g., Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033, 1048-49 (9th Cir.
2014) (holding that class of drivers were employees under right to control and economic realities
tests based on operating agreements and concluding that "[o]ur decision does not rely on any
individualized evidence"); Ayala v. Antelope Valley Newspapers, Inc., 327 P.3d 165, 175 (Cal.
2014) (right to control may be resolved on a class basis).

Sleepy's for their income.  See, e.g., Simpson Decl. at ¶¶ 4-5; Cevallos Decl. at ¶¶ 4-5; Ottley Decl. at ¶ 4.  Furthermore, Prong C can be resolved by looking at the Sleepy's IDA, which prohibited class members from performing non-Sleepy's deliveries, and Sleepy's practice of scheduling deliveries that require a full-time commitment from its drivers.  Martins, 2013 WL 1320454, at *6 (finding that prong three of the Massachusetts independent contractor test – which is essentially identical to the New Jersey ABC Test – could be resolved through common evidence); De Giovanni v. Jani-King Int'l., Inc., 262 F.R.D. 71 at 85 (D. Mass. 2009) ("common issues … predominate in determining whether the plaintiffs are 'capable of performing the service to anyone wishing to avail themselves of the services….'").

Similarly, common questions regarding whether Sleepy's wage practices violated the NJWPL and NJWHL will predominate.  There can be no dispute that all of Sleepy's contractors suffered the same types of deductions, which are outlined in the IDA and other Sleepy's documents, and are clearly listed in the contractors' pay statements.  See Sample Henderson Clarke Documents (Ex. Q).

Finally, common questions regarding damages will predominate.  The records show that Sleepy's made widespread deductions for items such as damage to merchandise claims, damage to customer property claims, uniforms, failure to properly use the scanner, and fines for things such as being late for a delivery, or being out of uniform.  See, e.g., Ottley Decl. at ¶ 14; Simpson Decl. at ¶ 15; Zezas Dep. 3/18/16 at p. 71 ("Deductions are taken for failures to provide the service that

31

we've outlined."). All of these deductions appear on the contractors' pay statements or in electronic spreadsheets maintained by Sleepy's and are readily calculable. <u>See</u> Sample Outside Carrier Expense Details; Zezas Dep. 3/18/16 at p. 71.

In <u>Tyson Foods</u>, the Court held that predominance can be satisfied even though each class member would eventually have to prove that time they spent donning and doffing, when added to their regular hours, added up to more than 40 hours in a given week. <u>Tyson Foods</u>, 136 S.Ct. at 1046. In doing so, the Court permitted the use of representative samples to show damages for class members. <u>Id</u>. Thus, post-<u>Tyson Foods</u>, courts have routinely held that individual damages issues alone are not sufficient to undermine predominance.[30] <u>See</u>, <u>e.g.</u>, <u>Vaquero v. Ashley Furniture Indus., Inc.</u>, 824 F.3d 1150, 1155 (9th Cir. 2016) ("Under <u>Tyson Foods</u> and our precedent, therefore, the rule is clear: the need for individual damages calculations does not, alone, defeat class certification."); <u>Mendis v. Schneider Nat'l Carriers, Inc.</u>, 2017 WL 497600, at *7 (W.D. Wash. Feb. 7, 2017) (same).

Common questions also predominate over the proposed class overtime damages. This is true even where the employer has misclassified its employees and failed to keep time records. Thus, courts have routinely granted class certification on

---

[30]    Accordingly, courts have routinely certified classes of delivery drivers who alleged that unlawful deductions were taken from their pay on a recurring basis. <u>See</u> <u>Roadrunner</u>, 2016 WL 7426134, at *4 (finding predominance where the "pay statements and independent contractor agreement suggest that the deductions fall into recurring categories common to all class members, which means that the question of who benefits may be answered on a class-wide basis."); <u>Spirit Delivery</u>, 2017 WL 1115163, at *14; <u>Martins</u>, 2014 WL 1271761, at *13.

the claims of workers that they were misclassified and owed overtime pay.  See, e.g.,
Thompson v. Bruister & Associates, Inc., 967 F. Supp. 2d 1204, 1220 (M.D. Tenn.
2013) (M.D. Tenn. Aug.23, 2013) (denying motion to decertify class of cable
installers); Gomez v. Tyson Foods, Inc., 295 F.R.D. 397, 400–02 (D.Neb.2013)
(certifying class under Rule 23); Jackson v. Bloomberg, L.P., 2014 WL 1088001, at
*15 (S.D.N.Y. Mar. 19, 2014).

As the Supreme Court explained in Tyson Foods, under Anderson v. Mt.
Clemens Pottery Co., 328 U.S. 680, 687 (1946), employees should not be deprived of
their wage on the grounds that the employer has not kept records of "the precise
extent of uncompensated work."  Tyson Foods, 136 S. Ct. at 1047.[31]  Thus, plaintiffs
may satisfy the predominance requirement on the question of overtime damages by
producing a representative sample of their hours worked "to fill an evidentiary gap
created by the employer's failure to keep adequate records."  Id.  See also Clark v.
Bally's Park Place, Inc., 298 F.R.D. 188, 200–01 (D.N.J. 2014) (finding
predominance where "the class is impacted uniformly by Defendants' failure to pay
for the time spent in" meetings even though the amount of time of uncompensated
time differed for each class member); Ridgeway v. Wal-Mart Stores, Inc., 2016 WL

---

[31]     Where an employer lacks accurate or adequate records, "an employee has carried out his
burden if he proves that he has in fact performed work for which he was improperly compensated
and if he produces sufficient evidence to show the amount and extent of that work as a matter of just
and reasonable inference. The burden then shifts to the employer to come forward with evidence of
the precise amount of work performed or with evidence to negative the reasonableness of the
inference to be drawn from the employee's evidence."  Mt. Clemens, 328 U.S. at 687-88.

4529430, at *17 (N.D. Cal. Aug. 30, 2016) (denying motion to decertify class where plaintiffs proposed "using a combination of hard data from Wal-Mart and, where Wal-Mart did not collect or keep such data, representative sampling" to determine the amount of hours they worked).[32]

### 3. Plaintiffs Further Satisfy Rule 23's Other Requirements of Numerosity, Typicality, Adequacy, and Superiority.

Plaintiffs' Proposed Class of 111 driver/contractors who operated one truck for Sleepy's plainly meets Rule 23(a)'s numerosity requirement. See Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001) ("generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"); 5 Moore's Federal Practice § 23.22[3][a], at 23-63.

Furthermore, the named Plaintiffs, as well as the proposed intervenors, satisfy Rule 23(a)'s typicality requirement because they are bringing claims that are typical of the class. As the Third Circuit held, cases "challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." Baby Neal, 43 F.3d at 58. Here, the Plaintiffs' claims and those of all putative class members are not only typical, they are identical in that they all

---

[32]     Moreover, this Court may certify a class for the misclassification issue and then may appoint a special master to determine individual damages under Fed. R. Civ. P. 53(a). See, e.g., Leyva, 716 F.3d at 515; Healy v. Int'l Bhd. of Elec. Workers, Local Union No. 134, 296 F.R.D. 587, 2013 WL 4494685 at *11 (N.D. Ill. Aug.22, 2013); Rosario v. Valentine Ave. Discount Store, Co., 2013 WL 2395288 at *9 (S.D.N.Y. May 31, 2013); Martins, 2014 WL 1271761, at *13.

were classified as independent contractors, signed the same IDAs, worked subject to the same controls, performed deliveries exclusively for Sleepy's, operated one truck for Sleepy's, were subject to the same types of deductions, and worked more than 40 hours a week without overtime pay.

Moreover, there can be no dispute that the class representatives and their counsel meet the adequacy requirement of Rule 23(a).  There is no potential conflict between the named Plaintiffs and the other members of the proposed classes since all were classified as independent contractors and all are asserting their claims solely against Sleepy's.  Szczubelek v. Cendant Mortgage Corp., 215 F.R.D. 107, 119 (D.N.J. 2003) ("the class representative must not have interests antagonistic to those of the class").  Similarly, Plaintiffs' seek damages for all class members.  Sleepy's, meanwhile, did not challenge the adequacy of Plaintiffs' legal counsel in its initial opposition, and would have no reason to.  See also Pls.' Mot. for Class Cert. (ECF No. 193) at p. 28-29 (presenting arguments on adequacy).

Finally, Plaintiffs satisfy Rule 23(b)'s superiority requirement because class adjudication is superior to requiring individual lawsuits.  Class treatment is superior where class members "shared similar roles and responsibilities, they all were governed by a uniform corporate [] policy, and they all are alleging that the [policy] was illegal." Rivet, 207 F. Supp. 3d at 432.  That is plain here.  Indeed, courts have routinely held that class treatment is superior where plaintiffs are delivery drivers alleging they were misclassified as independent contractors.  See, e.g., Border

35

Transfer of MA, 2017 WL 5196382, at *12; Spirit Delivery, 2017 WL 1115163, at

*14. See also Pls.' Mot. for Class Cert (ECF No. 193) at p. 38-40 (presenting

arguments on superiority).

> **D.    In the Alternative, This Court May Certify Solely the Issue of Whether Sleepy's Misclassified Its Delivery Driver/Contractors Pursuant to F.R.C.P. 23(c)(4).**

As an alternative to certifying a narrowed proposed class, this Court may grant

certification to the original proposed class on misclassification *only* pursuant to

F.R.C.P. 23(c)(4).[33] See Brandon v. 3PD, Inc., No. 13-3745 (N.D. Ill. Oct. 20, 2014)

(ECF No. 84) (attached as Ex. U) (granting class certification pursuant to Rule

23(c)(4) to determining whether delivery drivers were misclassified as independent

contractors under Illinois state wage law); Chiang v. Veneman, 385 F.3d 256, 267 (3d

Cir. 2004) ("Rule 23(c)(4) … gives [the court] ample power to treat common things

in common and to distinguish the distinguishable.") (abrogated on other grounds by

In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 318 n.18 (3d Cir. 2008));

see also In re Nassau Cnty. Strip Search Cases, 461 F.3d 219, 231 (2d Cir. 2006)

(remanding to district court to certify a class for liability and decide damages

separately using, for example, "bifurcation, …a magistrate or special master,

alteration of the class definition, the creation of subclasses…"); Lee v. City of

Columbus, 2009 WL 2876263, at *6 (S.D. Ohio Sep. 4, 2009) (appointing special

---

[33]     F.R.C.P. 23(c)(4) reads: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues."

master to determine damages to a specific class based on assessment of harm to

representative members of that class); Butler v. Sears, Roebuck and Co., 727 F.3d

796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-

wide basis, with separate hearings to determine—if liability is established—the

damages of individual class members, or homogenous groups of class members, is

permitted by Rule 23(c)(4) and will often be the sensible way to proceed.").

   "'The theory of Rule 23(c)(4) (A) is that the advantages and economies of

adjudicating issues that are common to the entire class on a representative basis

should be secured even though other issues in the case may have to be litigated

separately by each class member.'"[34] Walney v. SWEPI LP, 2015 WL 5333541, at

*31 (W.D. Pa. Sept. 14, 2015) (quoting Gunnells, 348 F.3d 417, 441 (4th Cir.2003)).

   The certification of the issue of whether Sleepy's misclassified its delivery

drivers as independent contractors is supported by the Gates factors.  First, the type of

---

[34] The Third Circuit has articulated a "non-exclusive list of factors" to guide trial courts considering
whether to certify an "issue class" including "[1] [T]he type of claim(s) and issue(s) in question; [2]
the overall complexity of the case; [3] the efficiencies to be gained by granting partial certification
in light of realistic procedural alternatives; [4] the substantive law underlying the claim(s),
including any choice-of-law questions it may present and whether the substantive law separates the
issue(s) from other issues concerning liability or remedy; [5] the impact partial certification will
have on the constitutional and statutory rights of both the class members and the defendant(s); [6]
the potential preclusive effect or lack thereof that resolution of the proposed issue class will have;
[7] the repercussions certification of an issue(s) class will have on the effectiveness and fairness of
resolution of remaining issues; [8] the impact individual proceedings may have upon one another,
including whether remedies are indivisible such that granting or not granting relief to any claimant
as a practical matter determines the claims of others; and [9] the kind of evidence presented on the
issue(s) certified and potentially presented on the remaining issues, including the risk subsequent
triers of fact will need to reexamine evidence and findings from resolution of the common issue(s)."
Gates v. Rohm & Haas Co., 655 F.3d 255, 273 (3d Cir. 2011).

claim, independent contractor misclassification, is amenable to resolution on common evidence.  As this Court has already determined as to the named Plaintiffs, the ABC test can be resolved on evidence based on facts identical to all class members (e.g., the standard Sleepy's IDA, Sleepy's usual course of business, Sleepy's prohibition on deliveries for other companies).  ECF No. 174.  This "issue class" determination on liability can be made on a full class-wide basis without implicating the Court's damages-related concerns over contractors who employed other drivers and drove multiple routes.  For example, in Martins v. 3PD Inc., Judge Woodlock of the District of Massachusetts certified a class of putative employee-drivers comprised of two types of individuals: "class members [who] contracted with 3PD in their individual capacities, and 3PD made deductions from its payments to them," [and] "[o]ther class members … [who] contracted with 3PD through corporate entities which they owned and through which they employed secondary drivers, and 3PD made any deductions from its payments to those entities."  2014 WL 1271761, at *10–14 (D. Mass. Mar. 27, 2014).  Despite those distinctions, the court determined that liability could be determined on a class-wide basis because both "types" of plaintiffs were misclassified as independent contractors under the same policies.  Id. at *11.  Yet because the damages inquiry was complex, the court appointed a special master pursuant to F.R.C.P. 53(a) to "resolve a difficult computation of damages." Id. at *13.  The court held that this was a "preferred method for placing a dollar figure on individual damages where liability has already been determined on a class-

38

wide basis," and that the master would "review 3PD's records and identify, for each individual class member, the deductions that are attributable to work he personal performed." <u>Id.</u>  Other courts have granted Rule 23(c)(4) certification regarding the issue of whether delivery drivers were employee or independent contractors. <u>Brandon v. 3PD, Inc.</u>, No. 13-3745 (N.D. Ill. Oct. 20, 2014) (ECF No. 84); <u>Rehberg v. Flowers Baking Co. of Jamestown, LLC</u>, 2015 WL 1346125, at *14 (W.D.N.C. Mar. 24, 2015) (in similar case involving delivery driver misclassification, court held that it "may also find further down the line that this action would be more appropriately maintained either with respect to particular issues pursuant to Rule 23(c)(4)").

Second, the issue class would be far more efficient than requiring separate determinations as to whether delivery drivers were employees or independent contractors.  Third, the substantive law at issue, the ABC test, is nominally separate from the issue of whether the delivery drivers are owed damages under the NJWPL or the NJWHL.  Thus, this factor support certification pursuant to Rule 23(c)(4).

Fourth, the remaining factors further support certification of an issue class given that a ruling on whether Sleepy's misclassified its delivery drivers should have preclusive effect on the other drivers given the identical relevant facts of their employment with Sleepy's.  Moreover, the kind of evidence that will be presented in the form of Sleepy's IDA, pay records, delivery manifests, Sleepy's memos to drivers, and Sleepy's gate logs will be identical for all of the class members.  Thus, this Court may follow the many others which have held that independent contractor

misclassification lends itself to certification of that issue pursuant to Rule 23(c)(4).

Once the Court has made a ruling on liability for the class, the Court can refer the matter of individual damages to a special mater pursuant to Rule 53(a), which authorizes a District Court to appoint a master if, among other things, the "appointment is warranted by ... the need to perform an accounting or resolve a difficult computation of damages." <u>Martins</u>, 2014 WL 1271761, at *13.  Indeed, the "appointment of a special master is often a preferred method for placing a dollar figure on individual damages where liability has already been determined on a class-wide basis. <u>Id.</u> (citing <u>Leyva v. Medline Indus., Inc.</u>, 716 F.3d 510, 515 (9th Cir.2013); <u>Healy v. Int'l Bhd. of Elec. Workers, Local Union No. 134</u>, 296 F.R.D. 587, 2013 WL 4494685 at *11 (N.D. Ill. Aug.22, 2013); <u>Rosario v. Valentine Ave. Discount Store, Co.</u>, 2013 WL 2395288 at *9 (S.D.N.Y. May 31, 2013)).  Thus, the Court may certify solely the issue of whether all of the drivers are employees or independent contractors here pursuant to Rule 23(c)(4).

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court grant their renewed motion for class certification and enter to the attached Proposed Order.

Respectfully submitted,

PLAINTIFFS SAM HARGROVE,
ANDRE HALL, AND MARCO EUSEBIO,

By their attorneys,


/s/Anthony L. Marchetti, Jr.      (ALM4302)
Anthony L. Marchetti, Jr.
MARCHETTI LAW, P.C.
900 N. Kings Highway, Suite 306
Cherry Hill, NJ 08034
(856) 414-1800
amarchetti@marchettilawfirm.com


/s/Benjamin J. Weber
Harold L. Lichten
(admitted pro hac vice)
Benjamin J. Weber
(admitted pro hac vice)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 5800
hlichten@llrlaw.com
bweber@llrlaw.com

Dated: April 25, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2018, I served a copy of this document by electronic filing on all counsel of record in this case.

<u>/s/Anthony Marchetti</u>

Anthony L. Marchetti, Jr.