# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

SAM HARGROVE, et al.,

*Plaintiffs*,

v.

SLEEPY'S LLC,

*Defendant.*

Civil Action No. 3:10-cv-01138-PGS-LHG

MEMORANDUM

After a remand from the Third Circuit, *Hargrove v. Sleepy's*, 974 F.3d 467 (3d Cir. 2020), the following four motions are before the Court:

(1)     Defendant Sleepy's LLC's ("Sleepy's") motion for judgment on the pleadings and to dismiss all claims in the Plaintiffs' Amended Complaint, (ECF No. 240), for lack of subject matter jurisdiction;[1] to dismiss Counts 3 and 4 (recission and mistake) for failure to state a claim, and alternatively, to strike the jury demand on Counts 3 and 4 because they are equitable remedies. (ECF No. 279).

(2)     Sleepy's motion for default judgment, (ECF No. 280), against Third-Party Defendants A&P Trucking LLC, A.C. Bautista LLC, AL Transport Services Corp., FB Logistics Corp., Georgian Shield Inc., HC Trucking LLC, S.O. Trucking LLC, and WR Trucking LLC (collectively, "Cross-Claim Defendants") based on the Cross-Claim Defendants' failure to answer, move or otherwise respond to the third-party claims filed by Sleepy's;

---

[1]     The Plaintiffs are:  Sam Hargrove, Andre Hall, Marco Eusebio, Henderson Clarke, Manuel Estrada, Wilfredo Rosario, Francisco Bautista, Alejandro Serrano, Julio Castillo, Aldrin Cevallos, Dante Gomez, Dimitri Celik, Gregorio Diaz, Javier Duque, Juan Brito, Keiron Ottley, Michael Simpson, Richard Tousett, and Ucha Barbakadze, individually and on behalf of all others similarly situated.

(3)     Plaintiffs' motion to remove default, (ECF No. 281), against Cross-Claim Defendants; and,

(4)     Plaintiffs' renewed motion for class certification.  (ECF No. 297).

The case concerns whether Plaintiffs were misclassified as independent contractors rather than employees by Sleepy's; and if yes, did the misclassification violate the New Jersey Wage Payment Law ("NJWPL") (N.J.S.A. 34:11-4.1b); and the New Jersey Wage and Hour Law ("NJWHL") (N.J.S.A. 34:11-56a)[2].

For the reasons set forth below,

1)     Sleepy's motion for judgment on the pleadings and to (a) dismiss all of Plaintiffs' claims for lack of subject matter jurisdiction; (b) dismiss the equitable counts; and (c) strike the jury demand is denied;

2)     Sleepy's motion for default is denied; and

3)     Sleepy's Third Party Complaint is dismissed sua sponte;

4)     Plaintiffs' motion to remove default is denied as moot; and

5)     Plaintiffs' renewed motion for class certification is granted as to liability, but denied as to damages.

## I.

Plaintiffs were delivery drivers for Sleepy's, a New York-based mattress retailer with multiple distribution centers, including one in Robbinsville, New Jersey.[3] Sleepy's ran approximately 50 to 90 trucks per day from its Robbinsville location.  Sleepy's allegedly

---

[2]   Oral argument was heard on July 19, 2021, and re-argument was heard on October 26, 2021.  Numerous papers have been filed (ECF Nos. 216, 221, 225, 292, 293 and 299).

[3]   Mattress Firm, Inc. purchased Sleepy's, LLC in February 2016.  (Def. Amended Complaint at ¶32, ECF No. 240.)

retained independent contractors, drivers and delivery companies (hereinafter referred to as drivers),[4] requiring them to sign a contract entitled "Independent Driver Agreement" ("IDA"), which set forth the drivers' and the company's respective rights and obligations.[5]

On a previous motion for summary judgment, the Court found that the Original Plaintiffs[6] were employees, and that Sleepy's had misclassified them as independent contractors under the ABC test adopted by the Supreme Court of New Jersey. (Tr. of Op. at 2:11-8:25, ECF No. 174). Sleepy's exercised strict control over drivers' work. Pursuant to the IDAs, drivers were required to wear Sleepy's uniforms, possess Sleepy's ID badges, and display Sleepy's advertising on their trucks. (*Id.* at 5:13-6:17). They were also required to pay their own workers' compensation insurance, and list Sleepy's as a "certificate holder" on their policies. They also had to purchase motor vehicle insurance and list Sleepy's as an additional insured on the policy. (*Id.* at 5:16-19).

Sleepy's monitored drivers' work through a scanner and computer software system called Agentek. (*Id.* at 4:21-23). Each driver had to be accompanied by a helper to assist with delivery. Sleepy's created and assigned routes to drivers with specific delivery times or windows. (*Id.* at 5:13-15). Drivers were prohibited from delivering goods for other companies while delivering Sleepy's mattresses. (*Id.* at 8:20-22). Many drivers worked full-time and had no other source of income. (*Id.* at 3:19-23). Sleepy's provided supplies, such as packing tape and mattress bags, but drivers maintained their own hand tools. (*Id.* at 4:23-5:3). Drivers reported to Sleepy's

---

[4]   Some drivers were single drivers with no company, others were companies with only one or two drivers, and others were companies employing several drivers, one with as many as thirty-two. (Driver Roster, ECF No. 216-12, Pls. Ex. L). For example, Henderson Clark started out directly contracting with Sleepy's in 2004, then in 2012 Sleepy's required him to form an LLC. *See* (Decl. Henderson Clarke, ECF No. 193-8, Ex. H.)

[5]   Some drivers, such as Wilfred Rosario, signed a similar contract called an "Independent Owner Agreement" (IOA). (ECF No. 216-8). Sleepy's does not argue that they are distinguishable in any significant way, but merely points out they are not identical. (ECF No. 292 at 18). In fact, the IDA's and IOA's contain provisions with identical language and both effect the same terms. *Compare* (ECF No. 216-4) *with* (ECF No. 216-8). Within the memo IDA's and IOA's will be collectively referred to as "IDA's."

[6]   The Original Plaintiffs are Sam Hargrove, Andre Hall, and Marco Eusebio. Later in the litigation Plaintiffs' counsel amended the Complaint to add other Plaintiffs.

warehouse in Robbinsville, spending two to three hours at the beginning of each day there, and were required to return to the warehouse at the end of a shift to deposit money orders and make returns.  (*Id.* at 5:8-12).

Sleepy's maintained Gate Logs that identified trucks and drivers and times of entry and egress, but Sleepy's did not monitor the number of hours worked by each driver.

(9)  Thursday   6/19/08

ROBBINSVILLE GATE LOG

| TIME IN | VENDOR / CONTRACTOR | DRIVER NAME | License # Last 4 Digits | HELPER NAME | PLATE | STATE | TIME OUT | SEAL NUMBER OUT | EMPTY Y/N | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1329 | MnK | Alex Prumanlter | 7712 | | XL 8604 | NJ | | | | |
| 1332 | MFB3 | Manuel Linberg | 7732 | Carlos Morales | XL 5744 | NJ | 1420 | 4861244 | | |
| 1337 | STT | Sam Hargrove | 2332 | Ed Rhonecra | XM 706W | NJ | 1438 | 4863464 | 7 | |
| 1339 | TIV22 | Felix Torres | 9701 | Mike Torres | XL 398P | NJ | — | — | | Return Truck |
| 1349 | TKC | John Moore | 5732 | Mark Porter | XK 175X | NJ | 1442 | 4863034 | | |
| 1350 | JH3 | Rafiq Watkins | 1842 | Khleen Watkins | XK 608N | NJ | 1430 | 4861481 | | |

(Robbinsville Gate Log showing Sam Hargrove, ECF No. 216-16, Ex. P).  For example, according to the above Gate Log, on Thursday, June 19, 2008, Hargrove arrived at 13:37 and left at 14:38.  Both parties agree that the Gate Logs are incomplete or missing for many days.  In this example, there is no corresponding Gate Log for when Hargrove returned to the warehouse later that day (ECF No. 293 at 9-10); but Plaintiffs' counsel copied thousands of pages of Gate Logs from 2008 to 2009 to corroborate Plaintiffs' testimony.

Sleepy's conducted field audits and inspected trucks for compliance with company policy.  (Tr. of Op. at 9:9-11).  Drivers failing to follow Sleepy's rules were subject to discipline and loss of pay.  (*Id.* at 6:9-11).  These deductions are noted on spreadsheets maintained by Sleepy's called Outside Carrier Expense Details.  (ECF Nos. 225-2 to 225-7).

OUTSIDE CARRIER EXPENSE DETAIL   Page 4 of 6

Date 03/24/2011

| Vendor # | Pay Week | | | | | |
|---|---|---|---|---|---|---|
| Truck # | Date | Total Stops | Total Made | Auto Rate | ADJ Total | Pay Total |
| 5STT | 09/11/2008 | 3 | 1 | $166.67 | $0.00 | $166.67 |
| 5STT | 09/13/2008 | 7 | 7 | $425.00 | $0.00 | $425.00 |
| 5STT | 09/16/2008 | 3 | 3 | $500.00 | $300.00 | $800.00 |

| Account # | Reason | | ADJ Amount | Comments |
|---|---|---|---|---|
| 20764 | BK PAY - BACK PAY | | $100.00 | FOR RUN ON 9/11 |
| Account # | Reason | | ADJ Amount | Comments |
| 20764 | BK PAY - BACK PAY | | $150.00 | FOR 9/11 RUN |
| Account # | Reason | | ADJ Amount | Comments |
| 79021 | FUEL - FUEL | | -$35.23 | NO FUEL FOR SAMEDAYS |
| Account # | Reason | | ADJ Amount | Comments |
| 79021 | FUEL - FUEL | | $35.23 | System Generated |
| Account # | Reason | | ADJ Amount | Comments |
| 79070 | REVRL - REVERSAL | | $50.00 | IMPROPER TRASH DISPOSAL 8/16 |

(Outside Carrier Expense Detail for Sam Hargrove, ECF No. 216-16, Ex. P). The spreadsheets also show how much individuals were paid on any given day in addition to other information.

Sleepy's also kept Driver Rosters – spreadsheets that show an identification code, the driver, and the helper(s):

| DRIVER | DRIVER NAME | HELPER 1 NAME | HELPER 2 NAME |
|---|---|---|---|
| 5SO | HALIE WOLDEABB | MAURICE SPRUILL | MICHAEL SINNETTE |
| 5STT | SAMUEL HARGROVE | FRANK CAMPBELL | |
| 5TGS | ISREAL SANCHEZ | MAXIMO RODRIQUEZ | |
| 5TGS2 | JAVIER DIAZ | HENRY RODRIQUEZ | PAUL DUENAS |
| 5TI11 | WILLIAM FLORES-MEJIA | DANI PABON | |
| 5TI12 | | SAMUEL CIFUENTES | JAVIER MELENDEZ |

(Sleepy's Driver Rosters showing Sam Hargrove, ECF No. 216-12, Ex. L). The Driver Rosters provide the identification code used in the Outside Carrier Expense Details referred to as the "Truck #." *See, e.g.*, Outside Carrier Expense Detail of Sam Hargrove, ECF No. 292-1. For example, Sam Hargrove's Truck # is 5STT. The Outside Carrier Expense Detail above shows that Hargrove was credited for a reversal of a $50 fine for improper trash disposal on September 16, 2008.[7]

---

[7] Some Driver Rosters also show the owner of the truck or trucks. (ECF No. 216-12, Ex. L).

To determine the proposed class (as well as approximate damages), Plaintiffs rely on the affidavit of a paralegal, Rebecca Shuford,[8] who examined the above documents and compiled the data. To summarize, Ms. Shuford reviewed the three types of documents to determine the proposed class. They are: (1) Gate Logs from 2008 to 2009, totaling thousands of pages; (2) Outside Carrier Expense Detail reports produced by Sleepy's for all trucks that made deliveries out of the Robbinsville facility from 2007 to 2010 and from 2011 to 2016; and (3) Driver Rosters.

Below are the relevant fines for Original Plaintiffs' wage deduction claim, which are allegedly illegal to impose upon employees under the NJWPL:

| Named Plaintiff Deductions by Category | | | | | | | |
|---|---|---|---|---|---|---|---|
| Person | Agentek Issues | Customer Claims | Damage Claims | Fines | Miscellaneous | Uniform Charges | Grand Total |
| Andre Hall | $755.00 | $515.00 | $1,007.00 | $1,602.00 | $5,682.74 | $1,341.00 | $10,902.74 |
| Marco Eusebio | $2,725.00 | $13,153.40 | $6,778.54 | $12,250.63 | $6,114.20 | $5,830.50 | $46,852.27 |
| Sam Hargrove | | | $300.00 | $50.00 | | $27.00 | $377.00 |
| Grand Total | $3,480.00 | $13,668.40 | $8,085.54 | $13,902.63 | $11,796.94 | $7,198.50 | $58,132.01 |

| Category Explanations | |
|---|---|
| Customer Claims: | Damage to Customer Property |
| Damage Claims: | Damage to Products |
| Fines: | Disciplinary fines such as being out of uniform, late delivery, improper trash removal, leaving garbage outside, late check in, failing inspection, bagging skaggs at the docs, not having bags, etc. |
| Uniform: | Purchase and Rental of uniforms |
| Agentek Issues: | Problems with the handheld scanner, such as being poor on time percentages |
| Miscellaneous: | Missing Merchandise, Zone Rate Adjustments, Forced Runs, etc. |

(Summary of Original Plaintiffs Wage Deductions, ECF No. 193-5, Affidavit of Rebecca Shuford, Ex. E3).

As to Plaintiffs' overtime claim under the NJWHL, Plaintiffs rely on the Outside Carrier Expense Detail spreadsheets; the incomplete Gate Logs, and declarations from drivers stating that they worked full-time, and in some instances they worked as many as fifty to seventy-five

---

[8]   Rebecca Shuford was paralegal of Plaintiffs' counsel's firm, but Plaintiffs' counsel does not allege she has any accounting or business background. *See* (Decl. Rebecca Shuford, ECF No. 305, Ex. A).

hours a week, or five to seven days a week – 10 to 12 hours per day.  *See* (Decl. Henderson Clarke, ECF No. 193-8, Pls. Ex. H).

## II.

### Sleepy's Motion Judgment on the Pleadings and to Dismiss all Claims

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a case may be dismissed "for lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011). A challenge to the Court's subject matter jurisdiction may be either "facial" or "factual." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Sleepy's Rule 12(b)(1) motion is properly understood as facial attacks because they contend that the Amended Complaint lacks sufficient factual allegations to establish subject matter jurisdiction and do not contest the veracity of the allegations themselves. *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). In reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d at 243 (quoting *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

In addressing a Rule 12(b)(1) motion to dismiss that facially attacks subject matter jurisdiction, the Court must apply the same standard of review as it does in a Rule 12(b)(6) motion. *See Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 74 (3rd Cir. 2011). Therefore, the court must construe the complaint in the light most favorable to the plaintiffs and accept the material allegations in the complaint as true. *See id.* Assuming such allegations to be

true, the Court must determine whether the plaintiff has alleged a plausible basis for the Court's jurisdiction. *Schuchardt v. President of the United States*, 839 F.3d 336, 344 n.5 (3d Cir. 2016).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). However, the court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" (*Id.*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.*). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (*Id.*)

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the pleadings after the pleadings have closed, but not within such time as to delay trial. Fed. R. Civ. P. 12(c). To prevail, the movant must show "that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004). In considering a motion for judgment on the pleadings, the Court applies the same standard as on a motion to dismiss under Rule 12(b)(6). *See Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004). "The difference between Rules 12(b)(6) and 12(c) is purely procedural as 12(c) requests for dismissal are governed by the same standards as 12(b)(6) motions." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 529 (D.N.J. 2004).

The long and the short of Sleepy's 12(c) motion to dismiss the ERISA claim and 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is that the Court lacks jurisdiction over the entire case.[9]  This is because:  (1) Plaintiffs cannot claim federal question jurisdiction without the ERISA claim, and (2) Plaintiffs have failed to adequately plead diversity jurisdiction or CAFA jurisdiction.  (ECF No. 290 at 4).   Despite Sleepy's contentions, Plaintiffs have adequately pled CAFA jurisdiction.

CAFA gives federal courts subject matter jurisdiction over class actions if the suit meets certain requirements such as: (1) the amount in controversy exceeds $5 million in the aggregate; (2) the class consists of at least 100 or more members; and (3) there is at least one plaintiff who is a resident of a jurisdiction different than that of at least one defendant. *See Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158 (3d Cir. 2013).  First, in determining the amount in controversy, one looks at several factors.  Those factors include "both actual and punitive damages," *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir.1993), as well as attorney's fees, *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir.1997).  Here, the putative class members (111) would also recover deductions and overtime pay from 2004 to present and may be entitled to treble damages, plus attorney's fees.  (ECF No. 286 at 6).  Plaintiff's counsel estimates the individual damages of each class member to average $33,000.00 (ECF 221, Exh. L, J), and their attorney's fees to exceed $1.5 million. (ECF No. 286 at 6).  Roughing out the math, the amount in controversy is approximately:

| | |
|---|---|
| $33,000 (damages) x 111 (class members) = | $3,663,000 |
| Treble Damages | $10,989,000 |
| Legal Fee | $1,500,000 |
| | |
| Amount in Controversy: | $16,152,000 |

---

[9]   Plaintiffs brought a claim under ERISA in the original Complaint filed in 2010, (ECF No. 1), but that claim has long-since been dismissed and the operative Amended Complaint does not have a separate count alleging a claim under ERISA.  (ECF No. 240).

9

Thus, Plaintiffs satisfy the amount in controversy requirement under CAFA.

Second, the number of class members must exceed 100. *Erie Ins. Exch.*, 722 F.3d at 158. Plaintiffs claim there are 111 class members who drove either one truck the entire time they worked for Sleepy's or who operated only one truck for at least six months. (ECF No. 216 at 2).

And lastly, only minimal diversity is required. That is, at least one of the named class member Plaintiffs must be a citizen of a state different than the states of citizenship of one of the Defendant's. *See* 28 U.S.C. § 1332(d)(2)(A). "Citizenship is synonymous with domicile, which consists of residency (i.e., physical presence) combined with an intent to remain indefinitely." *Wilmington Sav. Fund Soc'y, FSB v. Harvin*, 680 Fed. Appx. 144, 146-57 (3d Cir. 2017) (internal quotation marks omitted). "[M]ere residency in a state is insufficient for purposes of diversity." *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). Although domicile is in question (ECF No. 279 at 16-17), one may prove domicile by showing longtime residence and employment in a state. *See Mouratidis v. Mourtos*, No. 18-1176, 2018 WL 6050665 at *3 (D.N.J. Nov. 19, 2018). Here, Plaintiffs have "lived and worked in New Jersey for many years," (ECF No. 286 at 7); (Amended Complaint at ¶¶ 13-31). It can be inferred, then, that Plaintiffs are domiciled in New Jersey. Additionally, Sleepy's is headquartered in New York and incorporated in Delaware, (Amended Complaint at ¶32), so minimal diversity is met. As such, Plaintiffs have sufficiently alleged jurisdiction under CAFA, and this Court will deny dismissal on this ground.

### III.

### Sleepy's Motion for Judgment on the Pleadings
### as to Counts 3 and 4 (Mistake and Recission Claims)

In Count 3 and Count 4, Plaintiffs assert causes of action for mistake and recission. Sleepy's seeks to dismiss these counts because Plaintiffs have failed to state a claim by failing to allege prima facie elements of mutual mistake and unrelated mistake when they entered the IDA. (ECF No. 279 at 18-21).   On the other hand, Plaintiffs allege that the IDAs are void as a matter of public policy, so the lack of allegations makes no difference.   (Amended Complaint at ¶70-82).[10]  (ECF No. 279 at 18-21).

Since the Court has already determined on summary judgment that the Original Plaintiffs are employees as a matter of law, (Tr. of Op. at 12:13-16, ECF No. 174), the Court finds the IDAs are void as a matter of law, and accordingly, the counts for mistake and recission are void. The NJWPL provides, in relevant part:

> Every agreement made in violation of this section shall be deemed to be <u>null and void</u>, and the penalties in this act provided may be enforced notwithstanding such agreement . . . .

N.J.S.A. 34:11-4.7.[11]  (emphasis added).   "A contract contrary to public policy is illegal and void, however solemnly made." *Driscoll v. Burlington-Bristol Bridge Co.*, 77 A.2d 255, 269 (Ch. Div.

---

[10]  Sleepy's Motion for Judgment on the Pleadings under Rule 12(c) is better construed as a Motion to Dismiss under Rule 12(b)(6).  The pleadings window has not yet closed for Sleepy's because Sleepy's has not filed an answer to the Amended Complaint, and further, there can be no judgment on the pleadings if a defendant has not filed a responsive pleading. *Hetman v. Fruit Growers Express Co.*, 200 F. Supp. 234, 237 (D.N.J. 1961); *Hunter Douglas Northeast, Inc. v. Acme Window Coverings, Ltd.*, No. 08-4145, 2009 WL 10728642 at *5 (D.N.J. Mar. 24, 2009).

[11]  N.J.S.A. 24:11-4.10 provides: "Any employer who knowingly fails to pay the full amount of wages to an employee . . . shall be punished by a fine of not less than $500 nor more than $1,000 or by imprisonment for not less than 10 nor more than 90 days or by both the fine and imprisonment and, upon conviction for a second or subsequent violation, be punished by a fine of not less than $1,000 nor more than $2,000 or by imprisonment for not less than 10 nor more than 100 days or by both the fine and imprisonment."

1950).  Under New Jersey law, employment contracts or other contracts for services may be held

void and unenforceable where they are in violation of law, even where the party has already

performed services or employment under the contract.  *See Spaceage Consulting Corp. v.*

*Montecastro*, 2015 WL 2070085, at *7 (N.J. Super. Ct. App. Div. May 6, 2015).  Here, the

IDA's unlawfully classified Plaintiffs and the putative class members as independent contractors.

As such, the motion to dismiss is denied as moot, but the counts are dismissed as void.

## IV.

### Sleepy's Motion in the Alternative to Strike
### Plaintiff's Jury Demand for Count 3 and Count 4

Within the above motion (Section III), Sleepy's asserts that if mistake and recission are

not dismissed, then the jury demand should be stricken because they are equitable remedies.   It

suffices to say the IDA's are void as a matter of public policy, and the equitable relief of mistake

and recission is unnecessary, so the motion is denied as moot.

## V.

### Sleepy's Motion for Default Judgment

Sleepy's moves for default judgment of its third-party indemnification claim against

Plaintiffs' limited liability corporations (LLCs) who are named as Third-Party Defendants

because no answer has been filed.  (ECF No. 280).  Rather than answering or otherwise moving

for dismissal, Plaintiffs' counsel had not entered an appearance.[12]  Sleepy's also argues Plaintiffs

lack standing to contest the motion for default judgment because the LLC are separate entities.

(ECF No. 291 at 2-6).

---

[12]   Plaintiffs' counsel did not file an appearance for the Third-Party Defendants, which are the companies of the
Plaintiffs who entered IDAs.  Plaintiffs have filed briefs in opposition to Sleepy's Motion for Default Judgment and
have moved to remove the default.  (ECF Nos. 281, 287).

Generally, upon a finding that the cross-claimant (Sleepy's) has failed to state a claim upon which relief may be granted, a district court may deny a default judgment and instead sua sponte dismiss the underlying cross-claim. *See Xu v. Walsh*, 604 Fed. Appx. 124, 125 (3d Cir. 2015).[13] "As a general proposition, sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint." *Ray v. Kertes*, 285 F.3d 287. 297 (3d Cir. 2002). Stated differently, "[a] court may not dismiss a complaint on the pleadings unless no set of facts could be adduced to support the plaintiff's claim for relief." *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980). "[A]lthough disfavored, a sua sponte dismissal may stand . . . where it is clear that the plaintiff cannot prevail and that any amendment would be futile." *Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007). A district court applies the same standard as it would in deciding a motion to dismiss under Rule 12(b)(6). *Xu*, 604 Fed. Appx. at 125.

The Court has already found that the Original Plaintiffs are employees and that the IDAs are void as a matter of law. In addition, the crossclaim against the LLCs is to indemnify Sleepy's against its own alleged wrongdoing (treating drivers as independent contractors). As a matter of public policy, New Jersey courts have refused to allow parties to indemnify themselves "for a loss incurred as a result of [their] own willful wrongdoing." *High Point Ins. Co. v. J.M.*, 942 A.2d 804, 812 (N.J. Super. Ct. App. Div. 2008) (quoting *Atl. Emplrs. Ins. Co. v. Tots & Toddlers Pre-School Day Care Ctr.*, 571 A.2d 300, 304 (N.J. Super. Ct. App. Div. 1990)); *cf.*

---

[13]   In general, the Third Circuit has a policy "disfavoring default judgments and encouraging decisions on the merits." *Harad v. Aetna Casualty & Surety Co.*, 839 F.2d 979, 982 (3d Cir. 1988). In determining whether a default judgment should be granted, the Court considers: (1) prejudice to the plaintiff if the default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A defendant has a "litigable defense" where "allegations of [the] defendant's answer, if established on trial, would constitute a complete defense to the action." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (internal quotation marks omitted). "[C]ulpable conduct means actions taken willfully or in bad faith." *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983).

*Promaulayko v. Johns Manville Sales Corp.*, 562 A.2d 202, 205 (N.J. 1989). "The purpose of indemnification is restitution to prevent an active wrongdoer from being unjustly enriched by having another party discharge the obligation of the active wrongdoer." *Promaulayko*, 505 A.2d at 204; *see also Geeky Baby, LLC v. Idea Vill. Prods. Corp.*, No. 15-3454, 2018 WL 4502185 at *3 (D.N.J. Sept. 20, 2018). Here, to allow the claim against the LLCs to be prosecuted would permit Sleepy's, an active wrongdoer, to minimize its liability and impose it upon another party.

For the foregoing reasons, this Court denies Sleepy's motion for default judgment, and acting sua sponte, dismisses Sleepy's cross-claims against the Third-Party Defendants.

## VI.

### Plaintiffs' Motion for Class Certification

Next, the Court turns to the issue of Plaintiffs' motion for class certification (ECF No. 297). The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979). Class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-52 (2011). The party seeking certification must prove, by a preponderance of the evidence, that each of the four conditions of Rule 23(a) – numerosity, commonality, typicality, and adequate representation – are met and that at least one of the provisions of Rule 23(b) is satisfied. *See* Fed. R. Civ. P. 23(a)-(b); *see Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314, 318–19 (3d Cir. 2016). In relevant part, Rule 23(b) provides a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Within the Third Circuit, Rule 23(b)(3) can be understood to require ascertainability, predominance, and superiority. *Hargrove*, 974 F.3d at 469-70, 477. A district court "must first determine whether the putative class satisfies the . . . provisions of Rule 23(a), and then proceed[] to analyze the . . . provisions of Rule 23(b)(3)." *In re Citizens Bank, N.A.*, 15 F.4th 607, 612 (3d Cir. 2021).

Plaintiffs propose the following class:

> a deductions class and an overtime class of approximately 111 individuals who 1) entered into an Independent Driver Agreement (or similar agreement) with Sleepy's directly or through a business entity; 2) personally provided delivery services for Sleepy's on a full-time basis (i.e., more than 30 hours a week) out of Sleepy's Robbinsville, New Jersey facility; 3) operated only one truck for either all of their time while working at Sleepy's or for at least six months; and 4) who were classified as independent contractors at any time from March 4, 2004 to the present.

(ECF No. 293 at 32). Alternatively, Plaintiffs urge class certification solely on the legal issue of misclassification. (ECF No. 305 at 2-3). Plaintiffs seek certification under Rule 23(b)(3), submitting that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (ECF. No. 297 at 25-33).

A.      **Rule 23(a)**

### i. Numerosity

Generally, there is no minimum number of members needed for a suit to proceed as a class action under this rule, but generally if the proposed members exceed forty people, the first prong of Rule 23(a) has been met. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir.2001). The specific facts of each case may yield a different result. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). Here, Plaintiffs' proposed class of 111 drivers exceeds the threshold in *Stewart* nearly threefold and the Court sees no reason why the facts of this case should yield a different result. Sleepy's does not contest the numerosity requirement.

### ii. Commonality

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It does not require identical claims. *In re Chiang*, 385 F.3d 256, 265 (3d Cir. 2004). Instead, "a plaintiff must demonstrate that the class members have suffered the same injury," dependent "upon a common contention." *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 489 (3d Cir. 2018) (quoting *Dukes*, 564 U.S. at 350). However, such claims cannot be "so widely divergent that they would be better pursued on either an individual basis or by a sufficiently numerous class of similarly aggrieved" plaintiffs. *Id.* at 490. The threshold for satisfying commonality is low. *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986).

Here, Plaintiffs easily satisfy the commonality requirement. Each proposed class member was a delivery driver for Sleepy's based out of the Robbinsville facility, and each entered into contracts misclassifying the member as an independent contractor instead of as an employee. (ECF No. 293 at 32). Each proposed class member's injury stems from their misclassification as an independent contractor. (*Id.*). Here, Plaintiffs' proposed class consists of

employees who performed the same work for the same company (Sleepy's) and were subject to the same or similar policies (the IDA's) which gave rise to the same state wage claims. (ECF No. 293 at 32). As such, the commonality test is satisfied. *See Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417, 429 (D.N.J. 2016).

### iii. Typicality

Typicality requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality and commonality are closely related and often tend to merge. *See Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). "Typicality, however, derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present. *Marcus*, 687 F.3d at 597 (citations and internal quotation marks omitted). "[T]he class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *Id.* (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009)).

The Third Circuit has described the inquiry a court should make in evaluating typicality:

> Since one cannot assess whether an individual is sufficiently similar to the class as a whole without knowing something about both the individual and the class, courts must consider the attributes of the proposed representatives, the class as a whole, and the similarity between the proposed representatives and the class. This investigation properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims.

*Schering Plough*, 589 F.3d at 597-98. However, the threshold for typicality is low. Indeed, "cases challenging the same unlawful conduct which affects both the Original Plaintiffs and the

putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58.  Further, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id.*

The Original Plaintiffs have satisfied typicality.  Sleepy's highlights that one of the Original Plaintiffs, Eusebio, seeks to prove all of his claims individually and two other class members seek to prove part of their claims individually, (ECF No. 292 at 25), but proposed members of class actions have the right to opt out of the class without destroying the basis for class certification.  *See Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009).  And the Original Plaintiffs seek recovery for the same state wage claims as the other proposed class members based on injuries from the same or similar IDA's.  *Compare* (ECF No. 293 at 32) *with* (Amended Complaint at ¶¶55-69).  Moreover, the Court has already ruled in favor of Original Plaintiffs at summary judgment and rejected any defenses "inapplicable to many members of the class." *Schering Plough*, 589 F.3d at 599.  Specifically, the Court found that Sleepy's could not satisfy any of the three prongs of the "ABC" test, which requires satisfaction of all three prongs, and held the Original Plaintiffs were employees of Sleepy's (and therefore were misclassified as independent contractors).  (Tr. of Op. at 8:18-11:5, ECF No. 174).

### iv.  Adequate Representation

The final requirement of Rule 23(a) is adequacy of representation.  Counsel for the parties must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 625 (1997).  "For a class representative to be adequate, it must have a minimal degree of knowledge about the case, and have no conflict of interest with class counsel, and members of the class.  Only fundamental conflicts will defeat the adequacy requirement."  *In re Suboxone Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (citations and quotation marks omitted). "A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class."  *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012).

In opposition to class certification, Sleepy's argues that, given the contractual requirement for class members' LLC's to indemnify Sleepy's, proving Sleepy's liability would essentially prove class members' liability.  (ECF No. 292 at 22-25).  However, the Court has already determined in section IV that the IDA's are void as a matter of law, so this argument has little merit.  Because no "fundamental conflict" exists between class members, the adequacy requirement is satisfied.

**B.**      **Rule 23(b)(3)**

Plaintiffs having satisfied the requirements of Rule 23(a), the Court now turns to the requirements of Rule 23(b)(3).

**i. Ascertainbility**

The Third Circuit held that Sleepy's satisfied the requirement for ascertainability. *Hargrove*, 974 F.3d 467.  On remand, Sleepy's does not contest that the class is ascertainable.

**ii. Predominance**

The commonality and predominance requirements are closely linked."  *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 186 (3d Cir. 2019).  But Rule 23(b)(3)'s predominance requirement is "far more demanding than the commonality requirement" of Rule 23(a).  *Hydrogen Peroxide*

19

*Antitrust Litig.*, 552 F.3d at 311 (internal quotation marks omitted). "Issues common to the class must *predominate* over individual issues . . . ." *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 313-14 (3d Cir. 1998) (emphasis added). Determining whether predominance has been met requires a "rigorous analysis," and predominance "turns on the nature of the evidence and whether proof of the essential elements of the cause of action requires individual treatment." *Williams*, 837 F.3d 314, 319. A court must essentially "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues will predominate." *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311.

To prove the NJWPL and NJWHL claims for each proposed class members, Plaintiffs must prove:

(1)     The proposed class members were employees protected from wage deductions under the NJWPL, N.J. Stat. Ann. § 34:11-4.4, and entitled to overtime pay under the NJWHL, N.J. Stat. Ann. § 34:11-56a4. The proposed class members are presumed to be employees until an employer rebuts the presumption by satisfying all three prongs of the ABC test. *Hargrove*, 106 A.3d at 458. Whether the proposed class members are employees or not will require proof of whether:

a.     Sleepy's had control of the proposed class members or had the ability to control the proposed class members with respect to "completion of [their] work";

b.     "[T]he services provided were either outside the usual course of the business or that such service is performed outside of all the places of business of the enterprise"; and

c.     The proposed class members were engaged in "an enterprise that exists and c[ould] continue to exist independently of and apart from the particular service relationship" with Sleepy's." *Id.* at 459.

(2)     The proposed class members were subject to wage deductions prohibited by the NJWPL and worked overtime hours under the NJWHL without receiving overtime pay.

At summary judgment, the Court found many facts common to all members of the proposed class with respect to their status as employees, and these facts arose from common evidence.  Of particular importance was the control Sleepy's exercised over all of its workers and the requirements found common to all IDA's.  For example, Sleepy's "required plaintiffs to purchase insurance and list Sleepy's as an additional insured.  The IDA required the deliverers to wear Sleepy's uniforms and to display Sleepy's logos on their truck.  Moreover, Sleepy's supervised and monitored Plaintiffs' work through the Agentek system, and Sleepy's also directed the time each Plaintiff was to start work." (Tr. of Op. at 8:18-9:3, ECF No. 174.)  This Court also found that "[d]elivery services appear to be an integral part of Sleepy's business." (*Id.* at 4:11-12).  Proof of the proposed class members' employment status will include the same IDA's that class members signed, Sleepy's training manuals, delivery manifests, and testimony regarding the importance of delivery services to Sleepy's businesses.  (ECF No. 146, Ex. C); (Tr. of Op. 3:19-6:17, ECF No. 174).  The same evidence could be relied upon as proof of this element of the NJWPL and NJWHL claims.  The evidence required to prove the proposed class members' employment status is similar to that of *Williams*, 837 F.3d 314, where the Third Circuit held the plaintiffs had satisfied Rule 23(b)'s predominance requirement, because proof of employment status would turn on common franchise agreements, policy manuals, and testimony pertaining to those documents.  *Id.* at 821-22.[14]

---

[14]     Sleepy's argues proof of employment status must be individualized. (ECF No. 292 at 17-20).  However, the cases cited by Sleepy's either do not support its assertion or are distinguishable.  For example, in *Narayan v. EGL, Inc.*, 285 F.R.D. 473, 478 (N.D. Cal. 2012), the court held class certification was not appropriate because predominance had not been met, as over thirty percent of the proposed class members may have been permitted to work for other businesses.  In contrast, Sleepy's IDA restricted such work.  (Tr. of Op. at 9:1-11:5, ECF No. 174).  And in *In re FedEx Ground Package Sys. Empl. Practices Litig.*, 273 F.R.D. 424 (N.D. Ind. 2008), the court found several subclasses in a misclassification case had met the predominance requirement for class certification because

Sleepy's contends the IDA's, which were agreements between Sleepy's and proposed class members' LLC's, did not authorize Sleepy's to deduct pay for failure to follow Sleepy's rules from class members themselves. Rather, Sleepy's deducted compensation from the LLC, and then from there, the LLC determined whether pay should be deducted from the proposed class member or any helpers. (ECF No. 292 at 11-13). Plaintiffs brush this contention aside as the Court need only certify a class on the issue of liability and may leave the issue of damages to an individualized assessment.

The Court agrees that it is appropriate to certify a class on the issue of NJWPL liability and decide how to adjudicate damages only if Sleepy's is found to be liable to the proposed class members. Complications in determining damages do not prevent class certification on liability. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-57 (2016). When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* at 453 (internal quotation marks omitted); *see also Carrow v. FedEx Ground Package Systems*, No. 16-3026, 2019 WL 7184548, at *11-12 (D.N.J. Dec. 26, 2019).[15] Because common evidence may determine Sleepy's liability for wage deductions, Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3) as to the liability component of their NJWPL claims.

---

the subclasses could rely on common operating agreements – key was that in several states where different subclass members worked (including New Jersey), the mere right to control work was sufficient for a finding that a class member was an employee, and the right to control could be determined from the common operating agreements.

[15]    In *Carrow*, FedEx classified its delivery drivers as independent contractors and a portion of those drivers were required to form incorporated businesses (called "CSP's"). FedEx signed agreements between individual drivers but in some cases with the CSP's that drivers had formed. Sometimes the CSP's hired assistants to work with the drivers or had the assistants carry out deliveries themselves. 2019 WL 7184548, at *1-2. At times, FedEx made deductions from the drivers' wages and from payments to the CSP's. *Id.* at *2.

To prove the proposed class members are entitled to relief under the NJWHL, Plaintiffs must prove the proposed class members (a) worked overtime hours, (b) without receiving overtime pay. Presumably, evidence of these elements includes the Gate Logs, which may reflect the hours that the proposed class members worked both at the Robbinsville facility and making deliveries, as well as pay stubs, which would reflect a lack of overtime pay. Additionally, testimony about Sleepy's practice of not paying overtime may prove liability. *See* (ECF No. 146, Ex. C).

Sleepy's contends the number of hours worked by drivers can only be determined through individualized evidence, because the IDA's did not obligate the drivers to deliver merchandise themselves and because the drivers had the option of declining work offered by Sleepy's. (ECF No. 292 at 7-10). Plaintiffs acknowledge that the Gate Logs may be inconsistent and may not reflect exactly when each driver arrived at and departed from the Robbinsville facility, but argue that a representative sample of the hours that the drivers worked may be submitted to calculate damages -- but no such expert testimony has been proffered to calculate same. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *See generally Tyson Foods*, 577 U.S. 442. (ECF No. 297 at 20-22). As such, class certification is appropriate on liability, but based on the record, individual assessment of damages is required.

### iii. Superiority

Lastly, this Court must evaluate the superiority of a class action under Rule 23(b). The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 434-35 (3d Cir. 2016) (internal quotation marks omitted). Factors for the Court to consider are:

(a)      the class members' interests in individually controlling the prosecution or defense of separate actions;

(b)      the extent and nature of any litigation concerning the controversy already begun by or against class members;

(c)      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d)      the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Rule 23(b)'s superiority requirement can be satisfied where class members "shared similar roles and responsibilities, they all were governed by a uniform corporate . . . policy," and had identical legal claims.  *Rivet*, 207 F. Supp. 3d at 432.  A class action is also superior where the alternative would be numerous individual lawsuits, *Beneli v. BCA Fin. Servs.*, 324 F.R.D. 89, 99 (D.N.J. 2018), provided that proof of each individual claim relies on common evidence, *see Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 194 (3d Cir. 2001). And superiority may also be satisfied where the damages that could be awarded to proposed class members are so low that it would be hardly worthwhile for proposed class members to pursue an action individually.  *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 444 (3d Cir. 2017).

Sleepy's contends superiority cannot be met because it has a due process right to raise individual defenses as to each member, individual class members would likely prefer to litigate their claims separately to control litigation strategy, and a trial would be unmanageable because of Plaintiff Eusebio's individual claims.  Sleepy's also notes that the Original Plaintiffs alleged damages averaging $33,000 each, and that it would be worthwhile for proposed class members to pursue their claims individually.  (ECF No. 292 at 20-22).

To the contrary, Plaintiffs have satisfied superiority as to liability for their claims.  As explained, the proposed class members each have the same legal claims based on very similar

sets of facts. *See supra* Section I, page 2-7. Plainly, adjudicating liability for these claims in a single class action is more efficient than potentially holding 111 trials, deciding liability for each proposed class member's claim against Sleepy's. Although proving damages may require individualized determinations, as explained, issues of liability and damages may be bifurcated. Any issue determining damages does not defeat the superiority of a class action as to Sleepy's liability. In sum, the factors weigh in favor of superiority.

As such, Plaintiffs have satisfied all the requirements for class certification as to liability for their claims.

An Order will follow.

_____
PETER G. SHERIDAN, U.S.D.J.

March 1, 2022

25