# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAM HARGROVE, et al., individually and on Behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>             v.<br><br>SLEEPY'S LLC<br><br>      Defendant. | **CIVIL ACTION**<br><br><br>**C.A. No.: 3:10-CV-01138-PGS-LHG** |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

On March 4, 2010, Plaintiffs Sam Hargrove, Andre Hall, and Marco Eusebio filed their complaint on behalf of class of similarly situated individuals who contracted with Sleepy's and performed deliveries out of its Robbinsville, New Jersey facility.[1] In over 13 years of hard-fought litigation, Plaintiffs' have received favorable decisions in the New Jersey Supreme Court, <u>Hargrove v. Sleepy's, LLC</u>, 220 N.J. 289, 316 (2015) (landmark ruling adopting the ABC employment

---

[1]      After the District Court denied class certification in 2019, and before the Third Circuit reversed that decision, Plaintiffs filed an amended complaint with 19 named Plaintiffs, which is now the operative complaint. <u>See</u> Amended Compl. (ECF No. 240).

relationship test for New Jersey wage law claims), this Court (ECF No. 170) (granting summary judgment in favor of the three original named Plaintiffs holding that they were misclassified as independent contractors in violation of the New Jersey wage laws), and twice on the issue of class certification in the Third Circuit Court of Appeals, Hargrove v. Sleepy's LLC, 974 F.3d 467 (3d Cir. 2020) (clarifying the ascertainability requirement for class certification); Hargrove v. Sleepy's LLC, 2023 WL 3943738, at *5 (3d Cir. June 12, 2023) (upholding grant of class certification in this case). Most recently, this Court certified a class, which the Third Circuit affirmed, was which is defined as:

> A deductions class and an overtime class of approximately 111 individuals who 1) entered into an Independent Driver Agreement (or similar agreement) with Sleepy's directly or through a business entity; 2) personally provided delivery services for Sleepy's on a full-time basis (i.e., more than 30 hours a week) out of Sleepy's Robbinsville, New Jersey facility; 3) operated only one truck for either all of their time while working at Sleepy's or for at least six months; and 4) who were classified as independent contractors at any time from March 4, 2004 to the present.

Hargrove, 2022 WL 617176, at *7.

Plaintiffs claim that because they were employees, Sleepy's violated the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1b, by making deductions from its delivery drivers' compensation for items such as damage claims, uniforms, late check in, poor delivery time, bad customer service, and other fines. Additionally, Plaintiffs claim that Sleepy's was unjustly enriched by requiring its contractors to

pay for their own worker's compensation insurance, since New Jersey requires an employer to cover this cost. Plaintiffs also have a claim under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, for unpaid overtime, since New Jersey is one of only three states that does not recognize a motor carrier exception to overtime. Sleepy's denies these allegations and has asserted a number of affirmative defenses.

Following a third mediation in this case, the Parties have now reached a proposed class action settlement in this action that would resolve the claims of Plaintiffs and all the approximately 111 class members and named Plaintiffs. The proposed class action settlement creates a non-reversionary fund of $4.5 million. The Agreement is attached hereto as Exhibit A.[2]

The settlement also proposes service awards of $26,666 each to the original named Plaintiffs, who stuck with this litigation for 13 years and were each deposed several times each.

In addition, the settlement also proposes an award of attorneys' fees and costs of $2 million. This includes attorney's fees of $1.8 million which is 40 percent of the total settlement fund, as well as $200,000 in costs and expenses counsel paid out

---

[2]    The attached Agreement is not signed by the Parties. The Parties have agreed to the content of the Agreement and to the filing of this motion for preliminary settlement approval and anticipate filing a supplemental copy with signatures of all parties within the next week.

in order to litigate this case successfully for 13 years. While Plaintiffs acknowledge that this request is above the norm, this is an extraordinary case in where Plaintiffs have logged over 3,500 hours over the course of 13 years, including four separate trips to the Third Circuit Court of Appeals and the New Jersey Supreme Court. In addition, thousands of original manifests had to be reviewed and analyzed, requiring well over 500 hours of paralegal work inputting and data collection. Thus, a 40 percent fee is more than fair and reasonable, as this case has singlehandedly established the test for independent contractor/employee determinations in New Jersey, as well as the standards for class certification under Rule 23 in the Third Circuit. See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995) (citing In re Smithkline Beckman Corp. Secur. Litig., 751 F. Supp. 525 (E.D. Pa. 1990)) (noting in the Third Circuit "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund" have been approved); McAdams v. Robinson, 26 F.4th 149, 162 (4th Cir. 2022) (awarding attorney's fees of 43 percent of the common fund). In addition, the fee will be used to pay for the costs of using an agreed-upon third-party class action settlement administrator, Simpluris, which is a nationally-renowned firm that is expected to cost around $15,000. Decl. of Harold L. Lichten ¶ 15 (attached as Ex. C).

After accounting for attorneys' fees and service awards, Plaintiffs estimates that $2,420,000 will be paid to the participating members of the settlement class; even at full participation, the settlement would pay out significant shares to all class members with approximately 60 of the participants (more than half) receiving shares of over $10,000. The settlement is non-reversionary, and under no circumstances will any of the funds revert to Sleepy's. Instead, any settlement amounts that are not claimed by individuals who opt-out will be redistributed to participating settlement members, providing them with additional compensation from the settlement. Any uncashed checks will be distributed to the *cy pres* beneficiary Legal Services of New Jersey.

Plaintiffs, and their counsel who have litigated these types of cases and others across the country for decades, believe that this is an excellent result given risks and delays of continued litigation, and they believe that the settlement is fair, reasonable, and adequate. Plaintiff asks that the Court (1) grant preliminary approval of the proposed class action settlement so that Plaintiff may initiate notice (in the form attached to hereto as Exhibit B) to members of the proposed class and (2) set a date for a final fairness hearing on April 17, 2024 (or 90 days after preliminary approval is granted), at which the Parties will report the results of the notice process and seek final approval of the settlement. While this Motion is unopposed, Plaintiff's position is explained below.

## II.    BACKGROUND

### A.    Factual Background

Plaintiff and Settlement Class Members performed deliveries for Sleepy's out of a Sleepy's facility in Robbinsville, New Jersey. All signed similar Independent Driver Agreements ("IDA") that labeled them as independent contractors, as opposed to employees. In this Action, Plaintiff and Settlement Class Members alleged that they were misclassified, that they were Sleepy's employees, and that they sought to recover improper wage deductions and overtime under New Jersey law.

### B.    Relevant Provisions of New Jersey Law

Plaintiffs' claims consist of allegations of unlawful deductions in violation of the NJWPL, unpaid overtime under the NJWHL, and an unjust enrichment claim under New Jersey common law. Under the NJWPL, "[n]o employer may withhold or divert any portion of an employee's wages" unless another New Jersey or United States law applies or the deduction fits into a statutory list of exceptions. N.J.S.A. 34:11-4.4. The NJWHL provides that employees who work over 40 hours in a workweek shall receive "1 ½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week." N.J. Stat. § 34:11-56a4. The central issue in this case is whether Plaintiffs and Settlement Class Members were "employees" entitled to the protections of the NJWPL and NJWHL. In this

case, the New Jersey Supreme Court adopted the ABC test to determine whether a worker is an employee or an independent contractor. <u>Hargrove</u>, 220 N.J. 289, 106 A.3d 449, 465 (2015). Under the ABC test, the alleged employer bears the burden of proving that the plaintiff is an independent contractor by showing that:

> (A)   Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

> (B)   Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

> (C)   Such individual is customarily engaged in an independently established trade, occupation, profession or business.

N.J.S.A. 43:21-19(i)(6); <u>Hargrove</u>, 106 A.3d at 458. This Court ruled that for the three named Plaintiffs Sleepy's could not satisfy any of the three prongs of the ABC test and that, therefore, the three original named Plaintiffs were employees of Sleepy's under both the NJWHL and NJWPL.

## C.    Procedural Background

This case has an especially long procedural history. On March 4, 2010, Plaintiffs initially filed this case as a class and collective action alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), Family and Medical Leave Act ("FMLA"), New Jersey Wage Payment Law ("WPL"), and various state and common law claims relating to the Plaintiffs' allegation that Sleepy's misclassified them as non-employees, in the United States District Court

for the District of New Jersey. See ECF No. 1. In 2010 and 2011, the parties engaged in extensive discovery regarding both class and individual liability. On March 29, 2012, the District Court granted Sleepy's motion for summary judgment as to all counts brought by the three named Plaintiffs. ECF No. 85.

Plaintiffs appealed the summary judgment order, and the Third Circuit certified to the Supreme Court of New Jersey the question of which test a court should apply to determine a plaintiff's employment status for the purposes of the WPL and the New Jersey Wage and Hour Law ("WHL"). See Hargrove, Nos. 12-2540 & 12-2541.

On January 14, 2015, the New Jersey Supreme Court held that the "ABC test" test applies. Hargrove, 220 N.J. 289 (2015). On May 12, 2015, the Third Circuit vacated this Court's grant of summary judgment in Sleepy's favor and remanded the lawsuit back to this Court to evaluate Plaintiffs' claims that they were misclassified under the ABC test. Following an additional discovery period, on October 26, 2016, this Court granted Plaintiffs' motion for partial summary judgment as to their employee status under the WHL and WPL. ECF No. 170.

On February 28, 2017, the Parties met for a full-day mediation with Carole Katz, former chief counsel for FedEx Ground, in Newark, New Jersey. The mediation was unsuccessful.

On May 19, 2017, Plaintiffs moved to certify a class of individuals who (1) worked full-time making deliveries for Sleepy's and thus were misclassified as independent contractors; (2) were subject to improper deductions; and (3) worked over 40 hours per week without being paid over-time (time-and-a-half). The Court denied Plaintiffs' motion on February 28, 2018, finding that Plaintiffs could not prove ascertainability. ECF No. 213.

Plaintiffs again moved for class certification, on April 25, 2018. ECF No. 216. The District Court denied Plaintiffs' renewed motion on May 10, 2019. ECF No. 239.

Plaintiffs filed an Amended Complaint in the District Court on June 3, 2019, adding the following individuals as Plaintiffs: Henderson Clarke, Manuel Estrada, Wilfredo Rosario, Francisco Bautista, Alejandro Serrano, Julio Castillo, Aldrin Cevallos, Dante Gomez, Dimitri Celik, Gregorio Diaz, Javier Duque, Juan Brito, Keiron Ottley, Michael Simpson, Richard Tousett, and Ucha Barbakadze. ECF No. 240.

At the same time, Plaintiffs appealed the District Court's ruling on class certification to the Third Circuit. On September 9, 2020, the Third Circuit reversed the District Court's denial of Plaintiffs' motion, held that Plaintiffs' proposed class of 111 individuals was ascertainable, and remanded the case to the District Court for further proceedings. Hargrove v. Sleepy's LLC, 974 F.3d 479 (3d Cir. 2020).

On April 20, 2021, the Parties participated in a mediation with nationally-respected mediator M. Reid Estes, who is based out of Nashville, Tennessee. The mediation was not successful.

On May 6, 2021, Sleepy's sought default judgment on the third-party claims asserted against the named plaintiffs' delivery companies. On May 14, 2021, Sleepy's moved for partial judgment on the pleadings and to dismiss the Plaintiffs' Amended Complaint for lack of subject matter jurisdiction. On May 20, 2021, Plaintiffs moved for class certification.

On March 2, 2022, the District Court denied Sleepy's motions and granted Plaintiffs' motion for renewed class certification. In its ruling, the Court noted that two claims remained: the WPL and WHL claims arising under New Jersey state law. On March 15, 2022, Sleepy's filed a Rule 23(f) petition seeking to appeal the District Court's order granting class certification to the Third Circuit and, on March 18, 2022, moved for the District Court to stay proceedings pending the resolution of Sleepy's Rule 23(f) petition. On May 23, 2022, the Third Circuit granted Sleepy's 23(f) petition. On June 12, 2023, however, the Third Circuit upheld the District Court's ruling on class certification. Hargrove v. Sleepy's LLC, 2023 WL 3943738 (3d Cir. June 12, 2023).

The Parties agreed to try mediation again, this time with Dennis Clifford, a well-known mediator based out of Houston, Texas. The Parties met for a full-day

in-person mediation in Philadelphia on September 13, 2023. The Parties could not reach a settlement at the mediation. The Parties, however, continued to negotiate through the mediator for another week before agreeing to a settlement amount. The Parties continued to negotiate for several more weeks regarding the terms of the Settlement Agreement which is attached as Exhibit A.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

### A.    Monetary Terms

The settlement creates a non-reversionary fund of $4,500,000. Subject to Court approval, the settlement funds would be distributed as follows:

$2,420,000 - funds to be distributed to all participating class members;

$1,800,000 - attorney's fees in the amount of 40 percent of the Gross Settlement Amount and costs not to exceed $200,000[3];

$80,000 - comprised of a service awards to Plaintiffs Sam Hargrove, Andre Hall, and Marco Eusebio.

### B.    Procedures for Calculating Settlement Shares and Distributing Settlement Funds

Within 15 business days after the Court's Preliminary Approval of the Settlement, Sleepy's will provide the Settlement Administrator and Class Counsel

---

[3]    Plaintiffs costs include paying Simpluris, the third-party class action administrator for costs related to notice and payment to the participating settlement members, which has been estimated to be cost around $15,000.

with the names, last known addresses, last known telephone numbers, and social security or tax ID numbers for each Settlement Class Member. Settlement Agreement ¶ 22(c).

Class Counsel shall calculate the shares for each participating Class Member. Settlement Agreement ¶ 32. Each class member will be allocated $1,000 as a minimum share. Settlement Agreement ¶ 32(a). In addition to that minimum share, each Settlement Class Members will be allocated a pro rata share based on the number of workweeks they performed deliveries for Sleepy's from January 1, 2005 to December 31, 2016. Class Counsel shall total the number of workweeks for each Class member and all class members will be allocated a percentage of the Net Settlement Amount in proportion to the number of the total workweeks for the Class members. Settlement Agreement ¶ 32(b)(i). Under this calculation estimated shares will range from $1,000 to $94,000 and approximately 51 individuals will receive shares over $15,000, while 30 individuals will receive shares exceeding $30,000.[4] Lichten Decl. ¶ 19.

The settlement is non-reversionary, so any shares related to class members who are not ultimately located or who do not file a claim will be pooled together and

---

[4]    This estimate assumes full participation of the class members and named plaintiffs eligible for participation in the class.

redistributed to the Participating Class Members on a pro rata basis. Settlement Agreement ¶ 32(b)(ii).

The settlement checks will remain valid and negotiable for 180 days. If any funds remain 20 days after distribution, the amount shall be paid as *cy pres* to Legal Services of New Jersey. Settlement Agreement ¶ 41. A full list of the settlement shares of participating class members will be provided at final approval.

### C.    Release and Dismissal

All Participating Settlement Class Members would release all statutory or common law claims asserted in the initial Complaint or that could have been brought arising out of or related to the allegations of misclassification as independent contractors. Settlement Agreement ¶ 18. The release period covers January 1, 2005, through December 31, 2016. Id. The named Plaintiffs have agreed to a general release of all claims. Settlement Agreement ¶ 19.

## IV.    PRELIMINARY APPROVAL IS WARRANTED

### A.    Standard Governing Preliminary Approval

It is well-established that there is "an overriding public interest in settling class action litigation, and it should therefore be encouraged." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004)). Pursuant to Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The decision of whether to approve

a proposed settlement is left to the discretion of this Court, and the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995). At the same time, the Court should "begin with the guiding principle that 'a class action settlement is a private contract negotiated between the parties.'" Marshall v. Nat'l Football League, 787 F.3d 502, 509 (8th Cir. 2015).

Review of a proposed class settlement involves two steps: preliminary approval and a final fairness hearing. The Third Circuit Court of Appeals has "directed a district court to apply an initial presumption of fairness when reviewing a proposed settlement where": (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation. Warfarin, 391 F.3d at 535 (citing In re Cendant Corp. Litig., 264 F.3d 201, 232 n. 18 (3d Cir. 2001)).

Furthermore, "[t]he preliminary approval decision is not a commitment to approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" Gates v. Rohm & Haas Co., 248 F.R.D. 434, 439 (E.D. Pa. 2008) (citations and quotation marks omitted). "Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement

in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval." Phillips v. Caliber Home Loans, Inc., 2021 WL 3030648, at \*6 (D. Minn. July 19, 2021) (quoting In re M.L. Stern Overtime Litig., 2009 WL 995864, at \*3 (S.D. Cal. April 13, 2009)).

Thus, the primary issue before the Court in a preliminary approval motion is whether the proposed settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the proposed settlement should be given to class members, and a hearing should be scheduled to determine final approval. Manual for Complex Litigation, Fourth, § 13.14, at 172-73 (2004).

As discussed below, this question is answered in the affirmative.

### B.    The Class Certified by the Court Satisfies the Requirement for a Settlement Class.

This Court has already certified a class including:

A deductions class and an overtime class of approximately 111 individuals who 1) entered into an Independent Driver Agreement (or similar agreement) with Sleepy's directly or through a business entity; 2) personally provided delivery services for Sleepy's on a full-time basis (i.e., more than 30 hours a week) out of Sleepy's Robbinsville, New Jersey facility; 3) operated only one truck for either all of their time while working at Sleepy's or for at least six months; and 4) who were classified as independent contractors at any time from March 4, 2004 to the present.

Hargrove, 2022 WL 617176, at \*7. This Court should now certify the same class for settlement purposes and allow notice of the settlement to be distributed.

15

## C.    The Proposed Settlement is Fair and Reasonable.

### 1.    <u>Rule 23(e)(2)(A): The class representatives and class counsel have adequately represented the class.</u>

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes"). Here, this factor is likely to be satisfied because Plaintiffs' counsel has gone above and beyond litigating this case successfully for over 13 years. This included extensive classwide discovery, one trip to the New Jersey Supreme Court where the Court adopted the ABC test for all workers in New Jersey under the NJWPL and NJWHL, and three separate trips to the Third Circuit where the court vacated this Court's ruling on summary judgment in favor of Sleepy's, and later issued two ruling in Plaintiffs' favor on class certification.

There can be no question that Class Counsel have zealously represented the class members are in an excellent position to negotiate a settlement at this stage of the case, which is all that is needed to support this requirement. <u>See</u>, <u>e.g.</u>, <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 531 (3d Cir. 2004) (class counsel should have "an adequate appreciation of the merits of the case before negotiating,"); <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d 283, 319 (3d Cir. 1998) (granting settlement approval where, even in absence of formal discovery, "'[c]lass [c]ounsel's knowledge of this case are unquestionably adequate to support this settlement.'").

Class counsel are also uniquely experienced in wage and hour class action litigation, particularly on behalf of delivery drivers like Plaintiff. In addition to this case, Harold Lichten and Benjamin Weber of Lichten & Liss-Riordan, P.C. and Anthony Marchetti of Marchetti Law, P.C. have successfully represented couriers and delivery drivers in a number of wage-and-hour class actions.[5] See, e.g., Portillo v. Nat'l Freight, Inc., 606 F. Supp. 3d 72 (D.N.J. 2022) (holding on summary judgment that defendants misclassified a class of delivery drivers under the NJWPL's ABC test); Carrow v. FedEx Ground Package System, Inc., No. 16-3026 (D.N.J.), Dkt 161 (approving class action settlement on behalf of FedEx drivers who asserted claims under New Jersey wage laws); DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 405 (D. Mass. 2017) (granting class certification in truck driver misclassification case and stating of Attorneys Lichten and Weber: ""[t]he

---

[5]    See also Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (representing class of misclassified delivery drivers); Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013) (representing class of misclassified cable installers seeking unpaid wages); Hager v. OmniCare, Inc., No. 5:19-cv-00484, Dkt. 124 (S.D.W.V. Nov. 15, 2021); Taveras v. XPO Logistics, Inc., No. 3:15-cv-01550, Dkt. 123 (D. Conn. Aug. 11, 2017); Brandon v. 3PD, Inc., No. 13-3745, Dkt. 151 (N.D. Ill. Jan. 26, 2016); Martins v. 3PD, Inc., 2014 WL 1271761 (D. Mass. Mar. 27, 2014); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745 (D. Mass. Dec. 30, 2013) (class of delivery drivers were employees under Massachusetts law); Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass. 2009) (landmark decision of the Massachusetts Supreme Judicial Court on independent contractor misclassification); Oliveira v. Advanced Delivery Systems, Inc., C.A. No. 09-1311 (Mass. Super. Ct. 2009); Sherman v. American Eagle Express, Inc., d/b/a AEX Group, C.A. No. 2:09-00575-JS; (E.D. Pa. 2009); Fucci v. Eastern Connection Operating, Inc., C.A. No. 2008-2659 (Mass. Super. Ct. 2008).

plaintiffs' attorneys are highly experienced in class-action employment litigation and specifically in Wage Act misclassification claims"); Badia v. HomeDeliveryLink, Inc., 2015 WL 5666077, at *8 (D.N.J. Sept. 25, 2015). Lichten Decl. ¶¶ 6-9.

In addition, Attorneys Lichten and Marchetti have represented hundreds of FedEx drivers across the country, including in New Jersey, in similar lawsuits challenging FedEx's practice of classifying its drivers as independent contractors. See, e.g., Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *4 (D. Me. Mar. 14, 2014) ("Lead counsel, Harold Lichten, has represented numerous classes alleging misclassification and failure to pay wages and other benefits in individual and class actions across the country [and] the law firm of Lichten & Liss-Riordan represented classes of [FedEx] drivers in Connecticut, Massachusetts and Vermont…."); Carlson v. FedEx Ground Package Sys., Inc., No. 2:05-cv-00085 (D. Mont.).

Class counsel were able to draw on their extensive experience to achieve a settlement that in many ways exceeds the per week recovery in similar cases.

## 2. Rule 23(e)(2)(B): The proposal was negotiated at arm's length.

The Court must also consider whether the settlement "was negotiated at arm's length" at the final approval stage. Fed. R. Civ. P. 23(e)(2)(B). This factor focuses on whether the settlement negotiations "were conducted in a manner that would

protect and further the class interests." Advisory Committee Notes. Here, this factor plainly satisfied.

Generally, a settlement that is reached after lengthy litigation, the exchange of extensive discovery, and was the product of a formal mediation process with a third-party mediator satisfies the arm's length inquiry. See In re Nat. Football League Players' Concussion Injury Litigation, 307 F.R.D. 351, 377 (E.D. Pa. 2015) (presence of mediator helps guarantee class members claims are not compromised). Cleveland v. Whirlpool Corp., 2022 WL 2256353, at *5 (D. Minn. June 23, 2022). This case was zealously litigated by both side for over 13 years, extensive classwide discovery was obtained including over 20 depositions and thousands of documents were produced, and this settlement was the culmination of three full-day mediations with three separate nationally-respected mediators.

Moreover, the settlement achieves substantial money recoveries for the class members and calls for a percentage of the fun award for attorneys' fees, which ties Class Counsel's recovery to the amount they have recovered for the class. Aichele v. City of Los Angeles, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) ("[m]any courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient

manner.").

In sum, the arms-length nature of the settlement negotiations is reflected in both the process by which the settlement was reached and the resulting settlement terms.

### 3. Rule 23(e)(2)(C)(i): The relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal.

The Court should further consider whether "the relief provided for the class is adequate, taking into account ... the costs, risks, and delay of trial and appeal" among other relevant circumstances. Fed. R. Civ. P. 23(e)(2)(C). This factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome." Advisory Committee Notes. "Often, courts may need to forecast the likely range of possible class-wide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." Id.[6] This factor is likely to be satisfied for the following reasons:

---

[6]    See also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 806 (3d Cir. 1995) ("courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery…and a range in light of all the attendant risks of litigation."); In re Cendant Corp. Securities Litigation, 109 F. Supp. 2d 235, 256 (D.N.J. 2000) (settlement's reasonableness is "a yielding of the highest hopes in exchange for certainty and resolution").

First, the settlement provides substantial money payments to the Settlement Class Members. Many class members who worked the longest, at least two years, will likely receive settlement shares of more than $30,000 each. In addition, any funds from uncashed checks will be redistributed to Settlement Class Members who do not cash their initial checks after the expiration of the initial check cash period.

Second, the settlement enables class members to avoid real litigation risks. Sleepy's has at all times contested Plaintiffs' misclassification and wage claims, asserting a number of affirmative defenses. Moreover, Sleepy's has argued that even if it misclassified Plaintiffs, it did not owe them for deductions under the NJWPL or overtime under the NJWHL because they were paid through corporate entities.

Finally, the settlement enables the class members to avoid significant delay. Again, this case has already spanned more than 13 years, and it has not even reached the merits of misclassification of the class members or whether Sleepy's is liable under the NJWPL or the NJWHL.

It is also likely that either side may have sought appeals of any additional unfavorable decisions or trial verdict, as both sides have already done on summary judgment and (twice) on class certification.

**4.    Rule 23(e)(2)(C)(ii): The relief provided for the class is adequate, taking into account the effectiveness of any the proposed method of distributing relief to the class including the method of processing class-member claims if required.**

Under this factor, the court "scrutinize[s] the method of claims processing to

ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. This factor is likely to be satisfied because, the settlement notice process is straightforward and Settlement Class Members can participate in the settlement simply by declining to opt out.

Indeed, given that the contact information for class members, in some cases, is more than 10 years old, the Parties have agreed to a robust notice process that will ensure notice actually reaches the maximum number of class members. The Settlement Administrator[7] will undertake an initial mailing, and will skip-trace any undeliverable notices to attempt re-mailing. Settlement Agreement ¶ 22(f)-(h). The notice will instruct Class Members to submit a claim form or to contact the Settlement Administrator by telephone or electronic mail with confirmation that they have received the notice and that their contact information is correct prior to the final approval hearing. Settlement Agreement ¶ 22(g); Exhibit B. In addition, 21 days prior to settlement shares being distributed, Class Counsel may work with the Settlement Administrator to call and email class members to ensure their contact information is up to date. Settlement Agreement ¶ 22(j).

Moreover, the Parties have further ensured the effectiveness of the notice by

---

[7]     The Parties request that the Court appoint Simpluris as the Settlement Administrator, as set forth in the Settlement Agreement ¶ 17(v).

choosing Simpluris as a Settlement Administrator. Simpluris is a highly qualified and has been administering class action settlements for more than 15 years. Lichten Decl. at ¶ 21. During that time, Simpluris has administered approximately 8,000 class action settlements and distributed approximately $7 billion to class action members. Id. Moreover, Simpluris has routinely administered settlements and class notice in cases with far more class members than here, including at least four cases where LLR represented the plaintiffs. See, e.g., Myers v. Iowa Bd. of Regents, 2023 WL 7102158, at *3 (S.D. Iowa June 22, 2023) (approving Simpluris as settlement administrator with class of over 11,000 workers); Rimler, et al. v. Postmates, Inc., No. CGC-18-567868 (San Francisco Sup. Ct.) (class action settlement of $32 million for approximately 720,000 eligible claimants); Marko, et al. v. DoorDash, Inc., No. BC659841 (Los Angeles Sup. Ct.) (a class action settlement of $100 million for approximately 900,000 eligible claimants); Cole v. Square, Inc. d/b/a Caviar, No. BC719079 (Los Angeles Sup. Ct.) (class action settlement of $3 million for approximately 22,000 eligible claimants).

Thus, notice of the settlement will be adequately administered in this case.

### 5.  Rule 23(e)(2)(C)(iv): Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, the accompanying Settlement Agreement (Exhibit A) is the *only* agreement connected to this

settlement. Therefore, this factor is likely to be satisfied.

### 6.    Rule 23(e)(2)(D): The proposal treats class members equitably relative to each other.

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Advisory Committee Notes. "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Id. Here, all Settlement Class members asserted identical claims for unlawful wage deductions, unpaid overtime, and unjust enrichment, and will receive settlement shares based on the same formula. As a result, this factor is likely to be satisfied here.

### D.    The Proposed Service Awards Are Fair and Reasonable.

The Court need not rule on the reasonableness of the proposed incentive payments to the named Plaintiffs and the attorney's fees until it rules on Plaintiffs' motion for final settlement approval. However, the proposed service awards are, indeed, reasonable.

The proposed service awards, of $80,000 to be split among the three original named Plaintiffs, are within the range regularly approved in similar wage and hour cases involving smaller class settlements. See, e.g., In re Janney Montgomery Scott LLC Financial Consultant Litigation, 2009 WL 2137224, *12 (E.D. Pa. July 16,

2009) ($20,000 incentive payments in FLSA and Pennsylvania wage and hour case); Badia v. HomeDeliveryLink, Inc., 2015 WL 5666077, at *9 (D.N.J. Sept. 25, 2015) ($15,000 incentive payments in NJWPL wage and hour case); Martins v. 3PD, Inc., C.A. No. 1:11-cv-11313, Dkt. 211 (D. Mass. July 22, 2016) (approving total of $60,000 in incentive payments --$20,000 to each of three named plaintiffs); Civil v. Spirit Delivery, C.A. No. 4:13-cv-12635, Dkt. 242 (D. Mass. July 24, 2018) (approving incentive payment of $25,000 for named plaintiff); Brandon v. 3PD, Inc., C.A. No. 1:13-cv-3745, Dkt. 151 (N.D. Ill. Jan. 26, 2016) (approving incentive payments of $20,000 for two class representatives and $10,000 for named plaintiff not in the proposed class);, Willix v. Healthfirst, Inc., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving incentive payments of $30,000, $15,000, and $7,500 in wage and hour class action settlement); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *8 (S.D.N.Y. Dec.21, 2010) aff'd, 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs).

One of the reasons for service awards in employment cases, including wage and hour cases, is that workers bringing wage claims face the very real threat of retaliation. As one court observed: "[Enhancement] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name

to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). <u>See also Sand v. Greenberg</u>, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); <u>Craig v. Rite Aid Corp.</u>, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), appeal dismissed (3d Cir. Feb. 20, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

Here, the proposed service awards are justified by the benefits brought to the class members. The three named Plaintiffs brought this case among heavy odds, each attended 2-3 depositions, and their efforts resulted in not only a great result in this case, but helped to change the law in New Jersey to the benefit of all workers in the state who face the prospect of being misclassified as independent contractors.

### E.    The Proposed Attorneys' Fees and Costs Are Reasonable

At final approval, the Court will also review the proposed attorney's fee award in this case. Rule 23(e)(2)(C)(iii). This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes. Here, this factor is likely to be

satisfied because Plaintiffs' counsel's requested fee falls within Third Circuit norms. In particular, Plaintiffs' counsel seek attorney's fees representing 40 percent of the common settlement fund, plus costs. These fees and expenses will be paid at the same time as the payments to class members. The above fee is neither surprising nor excessive. First, in the Third Circuit, the "percentage of recovery" method is the predominant method of assessing attorney's fees in class action settlements. See General Motors Corp., 55 F.3d at 822; Galt v. Eagleville Hospital, 310 F. Supp. 3d 483, 497 (E.D. Pa. April 19, 2018); Dominguez v. Galaxy Recycling Inc., 2017 WL 2495406, at *7 (D.N.J. June 9, 2017).

Second, under the percentage-of-recovery method, district courts within the Third Circuit have approved fees equaling as high as 45% of the common settlement fund. See, e.g., In re Cendant Corp. PRIDES Litigation, 243 F.3d 722, 736 (3d Cir. 2001); Gen. Motors Corp., 55 F.3d at 822 ("fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); Dominguez, 2017 WL 2495406 at *8; In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 533 (E.D. Pa. 1990) ("Courts have allowed attorney compensation ranging from 19 to 45% of the settlement fund."). Courts in other Circuits have routinely approved settlements awarding attorney's fees of 40 percent or more of the common fund. See, e.g., McAdams v. Robinson, 26 F.4th 149, 162 (4th Cir. 2022) (awarding attorney's fees of 43 percent of the common fund); Cook v. Rockwell Int'l Corp., 2017 WL

5076498, at *1-2 (D. Colo. Apr. 28, 2017) ("A forty percent (40%) fee from the Settlement Fund is appropriate in this case given its lengthy history and the extraordinary work of Class Counsel, and consistent with what is typically agreed to by clients and attorneys in contingent litigation."); Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 297 (N.D. Cal. 1995) ("numerous cases that they claim establish a range of permissible fee percentages extending from 20-50 percent of the fund."); In re Warner Communications Securities Litigation, 618 F.Supp. 735, 749 (S.D.N.Y. 1985) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions"); In re Dun & Bradstreet Credit Services Customer Litigation, 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created").

Given that this case has been hotly litigated for more than 13 years, through three appeals to the Third Circuit and an appeal on a certified question to the New Jersey Supreme Court, as well as extensive discovery and three full-day mediations, the fee here is eminently reasonable. Moreover, Class Counsel undertook all of this litigation on a completely contingent basis, meaning that they took on the real risk of recovering nothing if Sleepy's had prevailed. Cook v. Rockwell Int'l Corp., 2017 WL 5076498, at *2 (D. Colo. Apr. 28, 2017) ("A forty percent (40%) fee from the

Settlement Fund is appropriate in this case given its lengthy history and the extraordinary work of Class Counsel, and consistent with what is typically agreed to by clients and attorneys in contingent litigation. Class Counsel accepted this case on a completely contingent basis. If the case had failed, they would have received nothing, no matter how many years, hours, and millions of dollars had been expended. At each stage, Class Counsel's investment of time and expense has been at their own risk, with recovery dependent on success. Given the considerable risk, through nearly three decades of litigation, with no guarantee of recovery, the legal team should be compensated for their efforts in securing excellent results for the Class."); DeHoyos v. Allstate Corp., 240 F.R.D.269, 330 (W. D. Tex. 2007) ("Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.").

At the final approval stage, Plaintiffs' counsel will provide more detailed information regarding their hours and expenses in this litigation so that the Court may perform a lodestar crosscheck. For the sake of preliminary approval, however, Plaintiffs estimate they have logged over 3,600 hours on this case over 13 years, including three trips to the Third Circuit, one trip to the New Jersey Supreme Court, and extensive discovery for approximately 19 plaintiffs. Lichten Decl. ¶ 20. Based on a very modest blended rate of $500 per hour for the three lead attorneys, the

lodestar for their work totals approximately $1.8 million. With nearly $200,000 in costs, a lodestar that is roughly equal to the requested fee demonstrates that the fees requested are, in fact, fair and reasonable.

Moreover, the requested legal fee in this case is also reasonable under the circumstances given that the NJWHL (and, after amendment, the WPL) provides for attorneys fees to be paid by the successful Plaintiffs. N.J.S.A. § 34:11-56a25; N.J.S.A. § 34:11-4.10. If Plaintiffs were to file a fee petition, as demonstrated above, they would likely receive a much higher fee than they are currently seeking. Indeed, due to their repeated successes in this Court, the New Jersey Supreme Court, and the Third Circuit, Plaintiffs' counsel likely receive a fee enhancement under Rendine v. Pantzer, 141 N.J. 292 (1995), and Walker v. Giuffre, 209 N.J. 124 (2012). The availability of these enhancements was recently reaffirmed by the New Jersey Supreme Court in Hansen v. Rite Aid Corp., 253 N.J. 191 (2023). Plaintiffs' counsel, therefore, are taking a significant discount off of their proposed lodestar, and foregoing a multiple in this case, which provides a benefit to the Class.

The attorney's fees requested here, therefore, meets the requirements for preliminary approval.

## V.    CONCLUSION

For the reasons stated above, Plaintiff requests that the Court grant Plaintiffs' Motion for Preliminary Approval of the Proposed Class Action Settlement by entering the Proposed Order attached hereto as Exhibit D.

Dated: January 5, 2024          Respectfully submitted,

PLAINTIFFS SAM HARGROVE, et al.

By their attorneys,

/s/Anthony L. Marchetti, Jr. (AM4302)
Anthony L. Marchetti, Jr.
MARCHETTI LAW, P.C.
317 Delsea Drive
Sewell, NJ 08080
(856) 824-1001
amarchetti@marchettilawfirm.com

Harold L. Lichten (admitted *pro hac vice*)
Benjamin J. Weber (admitted *pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 5800
hlichten@llrlaw.com
bjweber@llrlaw.com

## **CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Plaintiffs conferred with counsel for

Defendant regarding this motion and counsel for Defendant indicated Defendant

would not oppose this motion.

/s/Anthony L. Marchetti, Jr.
Anthony L. Marchetti, Jr.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2024, I served a copy of this document by

electronic filing on all counsel of record in this case.

/s/Anthony L. Marchetti, Jr.
Anthony L. Marchetti, Jr.